Christopher R. Dryden, Esq. (SBN 234476)
R. Michael Ghilezan, Esq. (SBN 282340)
**GLOBAL LEGAL LAW FIRM**
380 Stevens Avenue, Suite 311
Solana Beach, California 92075
Tel.:    (888) 846-8901
Fax:    (888) 846-8902
Email: mghilezan@attorneygl.com

Attorneys for Creditors WILLIAM HARTER,
MONICA HARTER, and HELP THE ONE, INC.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:19-bk-12516-TA |
| ULTIMATE BRANDS, INC., | Chapter 7 |
| Debtor. | **(AMENDED) CREDITORS' MOTION REQUESTING IMPOSITION OF MONETARY SANCTIONS PURSUANT TO FRBP 9011** |
| | Date: February 11, 2020 |
| | Time: 11:00 a.m. |
| | Courtroom: 5B |
| | Address: 411 w. Fourth Street |
| | Santa Ana, CA 92701 |

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

# **Table of Contents**

I.     SUMMARY OF ARGUMENT. .................................................................................. 2

II.     STATEMENT OF FACTS REGARDING THE NOVEMBER 5, 2019 HEARING
CONCERNING THE CASH COLLATERAL AGREEMENT MOTION. .............................. 5

III.     STATEMENT OF FACTS REGARDING MEET AND CONFER EFFORTS
CONCERNING THE PROPOSED ORDER, AND MR. MANG'S LODGING OF THE
LODGED ORDER. .................................................................................................. 10

IV.     THE LODGED ORDER SHOULD NOT HAVE BEEN LODGED WITH THE COURT
BECAUSE IT INCLUDED FINDINGS THAT THE COURT DID NOT MAKE AT THE
NOVEMBER 5, 2019 HEARING, AND OMITTED FINDINGS THAT THE COURT MADE
AT THE NOVEMBER 5, 2019 HEARING. ................................................................. 16

V.     THE CREDITORS' PROPOSED ORDER RESOLVES THE FOREGOING
DEFICIENCIES WITH THE LODGED ORDER, AND INCLUDES ADDITIONAL
APPROPRIATE FINDINGS RELATED TO THE GRANTING OF THE CASH
COLLATERAL AGREEMENT MOTION. ..................................................................... 20

VI.      THE COURT SHOULD, PURSUANT TO FRBP 9011, IMPOSE MONETARY
SANCTIONS AGAINST MR. MANG AND HIS FIRM JOINTLY, AND MR. BANNER AND
HIS FIRM JOINTLY, IN THE AMOUNT OF $6,300.00 RELATED TO THE LODGING OF
THE LODGED ORDER PURSUANT TO FRBP 9011. .................................................. 22

1.     Sanctions Should Be Imposed Against Mr. Banner And Greenberg Glusker Fields
Claman & Machtinger LLP Jointly For His Conduct With Respect To The Proposed Order.
.......................................................................................................................... 23

2.     Sanctions Should Be Imposed Against Mr. Mang And Marshack Hays LLP Jointly For
His Conduct With Respect To The Proposed Order, And For Filing The Lodged Order.. 25

VII.     CONCLUSION. ................................................................................................ 28

TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

Creditors William Harter, Monica Harter, and Help the One, Inc., creditors in the above-captioned Chapter 7 case (hereinafter collectively, the "Creditors"), hereby submit this motion requesting that the Court impose monetary sanctions in the amount of $6,300.00 pursuant to Federal Rules of Bankruptcy Procedure (the "FRBP") 9011 against Mr. Tinho Mang, counsel for Mr. Richard A. Marshack in his capacity as Chapter 7 Trustee (hereinafter, the "Trustee") of the Bankruptcy Estate (the "Estate") of Ultimate Brands Inc. (hereinafter, the "Debtor"), and his firm, Marshack Hays LLP, jointly; and Mr. Keith P. Banner, counsel for 660 BVD, LLC ("BVD"), and his firm, Greenberg Glusker Fields Claman & Machtinger LLP, jointly.

## I.    SUMMARY OF ARGUMENT.

The basis for the instant motion is Mr. Mang's lodging of the Order Granting Motion to Approve Cash Collateral Agreement, Compromise, and Post-Petition Financing, which the Trustee lodged with the Court on November 19, 2019 (the "Lodged Order") (Doc 236). A copy of the Lodged Order is attached hereto as Exhibit 4 pursuant to LBR 9021-1(b)(3)(B).

The subject of the Lodged Order is the Trustee's Motion to Approve Cash Collateral Agreement, Compromise, and Post-Petition Financing (the "Cash Collateral Agreement Motion") (Doc 173).

The Cash Collateral Agreement Motion was heard, and granted, on November 5, 2019, although the Cash Collateral Agreement Motion was not granted in its entirety, and the stipulation that is the subject of the Cash Collateral Agreement Motion (the "Stipulation") was not approved in its entirety. Thereafter, Mr. Mang circulated a proposed order granting the Cash Collateral Agreement Motion. However, that proposed order included findings that the Court did not made at the November 5, 2019 hearing (including that the Cash Collateral Agreement Motion was

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

granted in its entirety, and that the Stipulation was approved in its entirety), and omitted findings that the Court made at the November 5, 2019 hearing. Counsel for Creditors, Joshua J. Herndon, brought both of those matters to Mr. Mang's attention while also proposing to Mr. Mang a revised order that included the findings that the Court made at the November 5, 2019 hearing. However, rather than lodging Mr. Herndon's revised order with the Court, Mr. Mang instead solicited Mr. Banner to ascertain whether he was agreeable to Mr. Herndon's proposed draft. Mr. Mang insisted on soliciting Mr. Banner's to ascertain whether he was agreeable to Mr. Herndon's proposed draft even after Mr. Herndon informed Mr. Mang that his revised order correctly reflected the findings the Court made at the November 5, 2019 hearing, regardless of whomever approves or disapproves of them.

Thereafter, Mr. Banner informed Mr. Mang that he was not agreeable to Mr. Herndon's revised draft, and he implored Mr. Mang to lodge his proposed order with the Court. However, that conduct by Mr. Banner was improper because, as a result of him appearing on BVD's behalf at the November 5, 2019, he knew that Mr. Mang's proposed order included findings that the Court did not made at the November 5, 2019 hearing, and omitted findings that the Court made at the November 5, 2019 hearing.

Thereafter, Mr. Mang acquiesced to Mr. Banner's demands, and lodged his proposed order with the Court, even though Mr. Mang should have known that what Mr. Banner was demanding did not correctly reflect the material findings the Court made at the November 5, 2019 hearing.

Mr. Mang's conduct in lodging his proposed order is even more egregious given that he did so even after Mr. Herndon emphasized to him that it would be improper for Mr. Mang to lodge that proposed order because it did not include all the material findings that the Court made when it granted the Cash Collateral Agreement Motion.

Moreover, Mr. Mang insisted on lodging an order with the Court even though he had requested, *but had not received*, the transcript from the November 5, 2019 when he lodged the order. Mr. Mang also insisted on lodging an order even though

3

Mr. Herndon and counsel for other creditors of the Estate suggested that Mr. Mang wait to submit his proposed order until after he had received and distributed the transcript. It was wrong for Mr. Mang to proceed in that manner because *he should have reviewed the Transcript <u>before submitting a proposed order</u>*, which would have informed him that (1) it would have been improper to lodge his proposed order, and (2) that it would have been proper to lodge Mr. Herndon's revised order instead.

Finally, and related to the foregoing circumstance concerning the Transcript, Mr. Mang has attempted to convince the Court that the Transcript informed his decision to lodge the Proposed Order. However, Mr. Mang failed to inform the Court that, as established by Mr. Mang's own email correspondence as explained further below, he decided to lodge the Proposed Order <u>before he even received the Transcript</u>.

Monetary sanctions pursuant to FRBP 9011 are proper against Mr. Banner and his firm jointly for (1) instructing Mr. Mang to lodge an order with the Court that he knew included findings that the Court did not made at the November 5, 2019 hearing, and omitted findings that the Court made at the November 5, 2019 hearing, and (2) signing off on that order when Trustee's counsel indicated that it would be lodged with the Court. By engaging in that conduct, Mr. Banner knew that the allegations and other factual contentions in the Proposed Order did not have evidentiary support; and that the allegations and other factual contentions in the Proposed Order were not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Mr. Banner also engaged in that conduct to cause unnecessary delay, or needless increase in the cost of litigation to Creditors.

Monetary sanctions pursuant to FRBP 9011 are proper against Mr. Mang and his firm jointly for lodging an order with the court that included findings that the Court did not made at the November 5, 2019 hearing, and omitted findings that the Court made at the November 5, 2019 hearing. Mr. Mang engaged in that conduct even though he was put on notice that the order he proposed lodging with the Court included findings that the Court did not made at the November 5, 2019 hearing, and

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

CREDITORS' MOTION REQUESTING IMPOSITION OF MONETARY SANCTIONS PURSUANT TO FRBP 9011

omitted findings that the Court made at the November 5, 2019 hearing. At the time Mr. Mang presented the Lodged Order to the Court, he could not have possibly believed that the allegations and other factual contentions in the Proposed Order had evidentiary support; or that the allegations and other factual contentions in the Proposed Order were likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## II.    STATEMENT OF FACTS REGARDING THE NOVEMBER 5, 2019 HEARING CONCERNING THE CASH COLLATERAL AGREEMENT MOTION.

The Court heard oral argument on the Cash Collateral Agreement Motion on November 5, 2019. At the November 5, 2019 hearing, counsel for Creditors, Mr. Joshua J. Herndon, stated that it was Creditors' position that the relief the Trustee was requesting in the Cash Collateral Agreement Motion assumed the validity of a purported pre-petition assignment (the "Purported Assignment") of the assets (the "Assets") of non-debtor, Ultimate Franchises, Inc. (hereinafter, "UFI"):

> "MR. HERNDON: Your Honor, respectfully, we believe that the Trustee is putting the cart before the horse with respect to the relief that he's requesting. Because the relief that he's requesting assumes the validity of the purported prepetition assignment of Ultimate Franchises or UFI's assets to Ultimate Brand on the eve of the bankruptcy. And we don't believe that that conveyance was proper for several reasons." (*See* Transcript of the November 5, 2019 hearing (the "Transcript"), a copy of which is attached hereto as Exhibit 6, at page 2:11-18.)

In response, the Court clarified that it would not determine title to the Assets in the Cash Collateral Agreement Motion:

> "THE COURT: **The Court is not going to determine title in this motion. That's very clear. And if that wasn't clear, let me make it clearer now**. This is not a declaratory relief adversary proceeding in which somebody has asked for a Rule 56 order. This is simply a compromise proposed by the Trustee with respect, I guess, to one of potentially several claimants. That's it. So you could, for practical purposes say, this is a motion regarding a compromise over the Trustee's rights to the Brooklyn Bridge. That's about as far as you're going to get

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

CREDITORS' MOTION REQUESTING IMPOSITION OF MONETARY SANCTIONS PURSUANT TO FRBP 9011

1  with respect to determination of what are the underlying rights. Does that
2  help you frame the argument?" (Emphasis added.) (*See* Transcript at
3  page 2:24 to 3:11.)

4  In response, Mr. Herndon reiterated that Creditors were concerned that the
5  practical effect of granting the Cash Collateral Agreement Motion could be to deem
6  the Purported Assignment valid, which the Court emphasized was not the case:

7  "MR. HERNDON: I think so, your Honor. I mean, I just want to be clear
8  that the concern is that the practical effect of granting the Trustee's
9  motions could be to, I guess, deem valid this conveyance of the asset."

10  "THE COURT: **Not going to happen. The Court is specifically
disclaiming any of that**. I recognized from day one that that's a disputed
one. The Court is in no position, nor is it inclined to give a summary
order clarifying title." (Emphasis added.)" (Emphasis added.) (*See*
Transcript at page 3:12-20.)

The Court also further clarified its understanding of the scope of the Cash
Collateral Agreement Motion:

"Now I -- don't get me wrong. It's not that I'm antagonistic to your
position, but from the standpoint of the Trustee, he says there's nothing
I can do other than filing a no-asset report today. There's nothing I can
do except play ball with this major secured creditor. And by the way,
yeah, litigation would be a way to get their attention, but there's no
money here to finance litigation. So, your client and the other objectors
would have a much more receptive audience if you were talking about
money, i.e., yeah, give us a war chest to fight with the gorilla, then maybe
we have something we can talk about. But, otherwise, what's the Trustee
going to do? He's either got to fold his flag right now or go to the next
step.(*See* Transcript at page 4:19 to 5:6.)

The Court and Mr. Herndon subsequently had the following exchange
concerning the Court's understanding of the Trustee's reasons for filing the Cash
Collateral Agreement Motion and its rationale for granting the Cash Collateral
Agreement Motion; and the Creditors' concerns related to, and contemplated actions
regarding, the Purported Assignment:

"THE COURT: The Trustee is saying, Judge, this is my only path out of
the wilderness. I don't think I have much to bargain with anyway, so let
me do this deal. So unless somebody can point to something that is a true
prejudice to your position, why would I say, no?

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

6

MR. HERNDON: And, in fact, there may not be a true prejudice if the Trustee's motions are granted, if my clients are still able to take action with respect to the purported prepetition assignment. If they would still be able to act -- I mean, they've considered the possibility –

THE COURT: No adjudication is offered nor intended to the Brooklyn Bridge. So, I guess –

MR. HERNDON: Very well, your Honor.

THE COURT: -- BVD, whatever their name is, 660 BVD? Yeah. They must reckon that proceeding further is probably buying a lawsuit with your folks.

MR. HERNDON: I -- frankly, your Honor, I think there's a really good chance of that.

THE COURT: I'm sure there is.

MR. HERNDON: And, by the way, I appreciate you giving me the time. I don't want to drone on and on. I just –

THE COURT: Do not -- no.

MR. HERNDON: -- am advocating for them –

THE COURT: I want zealous advocacy, and yours is among those.

MR. HERNDON: I want to make sure –

THE COURT: So, thank you very much for doing that.

MR. HERNDON: -- that their rights are protected.

THE COURT: You betcha." (*See* Transcript at page 5:19 to 6:24.)

Thereafter, counsel for Creditors Michael John Patterson and Wheatstrong Enterprises, Mr. Eric A. Mitnick, emphasized that his clients were concerned that the breadth of the Stipulation appeared to cut off any rights to challenge the Purported Assignment, the claim (the "BVD Claim") of creditor 660 BVD, LLC ("BVD"), and any collateral securing the BVD Claim:

"MR. MITNICK: And our concern comes from the breadth of that stipulation to use cash collateral, that appears to cut off any rights to challenge the fraudulent transfer to the Debtor. As long as there's language that preserves the ability of other creditors to do that, we understand completely where the Court is coming from. But it's so broad and it's so overreaching. It cuts off any ability to challenge 660 BVD's

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

claim, and any collateral that's securing that claim in this estate." (*See* Transcript at page 7:6-15.)

After hearing the foregoing arguments by Mr. Herndon and Mr. Mitnick, the Court stated that its understanding was that, by filing the Cash Collateral Agreement Motion, the Trustee was giving up its right to challenge BVD under a fraudulent conveyance theory:

> "THE COURT: I'm going to construe your argument to be something like the following. There's a case from the Supreme Court called <u>Moore v. Bay</u>. And what <u>Moore v. Bay</u> says is that if a creditor has a fraudulent conveyance theory, in a bankruptcy the transferor becomes the sole plaintiff under that theory. And, therefore, by this compromise, the Trustee's giving up the right to challenge 660 BVD under some sort of fraudulent conveyance theory. Is that about what you're arguing?" (*See* Transcript at page 7:19 to 8:3.)

In response, Mr. Mitnick emphasized that BVD's efforts to improve its position would cause the creditors of UFI to be prejudiced if the Court granted the Cash Collateral Agreement Motion:

> "MR. MITNICK: That is essentially it, because BVD is not -- 660 BVD has been trying to improve its position and its collateral base from the original emergency motion for use of cash collateral that was denied by this Court back in August. With the Court's perception with which we agreed, that the transfer for no consideration was a fraudulent transfer. And Uniform Franchises, Inc. is a different entity. It is not a debtor in this case. So the creditors of Ultimate Franchises, Inc. are being prejudiced by the proposed agreement that this Court appears to be willing to approve." (*See* Transcript at page 8:4-14.)

Based on Mr. Herndon's and Mr. Mitnick's arguments set forth above, the Court explained, with respect to the Cash Collateral Agreement Motion, that it would bind the Trustee's rights with respect to the Estate's claims against BVD, *but that it would not bind the rights of affected third-party creditors*:

> "THE COURT: Well, I think the more nuanced way to put it is this. **As far as the estate's claim against 660 BVD or against somebody else for fraudulent conveyance, to the extent that's wrapped up in this agreement, I am prepared to approve that in exchange for what seems to be some consideration**. Now, it's not a sweet deal because, frankly, the Trustee has very few cards to play. I am, however, sensitive to the argument that other parties may still persist in the claim that there's

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

something wrong with how title was passed. **So what I think I'm inclined to do is I'm inclined to say, I will bind the rights of the estate, but not affected third-party creditors.** So that basically carves out of <u>Moore v. Bay</u> any theory that might otherwise apply. That's where I'm inclined to go with this thing." (Emphasis added.)(*See* Transcript at page 8:15 to 9:4.)

The Court amplified that finding as follows later during the November 5, 2019 hearing:

"THE COURT: I do want to circle back on the order concluding this proceeding though. **And this -- to amplify what I just got finished saying.** I hear the pain of some of the people out there who say, well, look, the Trustee never should have had this asset because it was fraudulently conveyed. And there is this case, <u>Moore v. Bay</u> -- if you're not familiar with it, look it up. And **I'm prepared to say, the estate will be bound, <u>but third-party offended creditors will not be bound, and they have the right to attack the underlying transaction</u>**, because they're going to finance it themselves. **Unlike this poor estate who has no money, these folks, presuming they have a good case, can take their own shot.**" (Emphasis added.)(*See* Transcript at page 11:9-22.)

In fact, Trustee's counsel who was present at the November 5, 2019 hearing, Ms. Laila Masud, informed the Court that she would make sure the above finding is included in the order granting the Cash Collateral Agreement Motion. (*See* Transcript at page 11:25 to 12:2.)

Thereafter, counsel for BVD, Mr. Keith P. Banner (who appeared on BVD's behalf at the November 5, 2019 hearing), was given an opportunity to address the Court, at which time he requested that the Court grant the Stipulation in its entirety. (*See* Transcript at page 13:18-20.) In response, the Court not only declined to do so, the Court made it absolutely clear that *only the Estate had given a release of claims*, and it clarified the broad rights that would be afforded to the Estate's creditors notwithstanding the granting of the Cash Collateral Agreement Motion:

"THE COURT: **I think that creditors, insofar as they have independent standing to attack any of these transactions as fraudulent conveyances, I think that right should persist. <u>The only body that is bound by this is the estate.</u>** The estate by entering into this agreement is essentially giving a release of claims by the estate, i.e., the Trustee of, I guess, all theories. Preference, equitable subordination,

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

contractual subordination, any of those kind of theories, the estate must stay silent, because they have surrendered their rights for consideration. That's what I want the order to read. **If offended creditors or franchisees have independent rights, and I'm thinking primarily a fraudulent conveyance, because that's what <u>Moore v. Bay</u> was about, those can persist. And so if they want to independently finance their claim against this consolidated entity, I guess they still have leave to do that.** But preference, fraudulent conveyance by the estate, equitable subordination by the estate, all those things are sold. All right. So that will be the order." (Emphasis added.) (*See* Transcript at page 14:4-24.)

In fact, the Court expressly instructed Ms. Masud to make sure that point was clarified in the order granting the Cash Collateral Agreement Motion. (*See* Transcript at page 14:25 to 15:2.)

## III. STATEMENT OF FACTS REGARDING MEET AND CONFER EFFORTS CONCERNING THE PROPOSED ORDER, AND MR. MANG'S LODGING OF THE LODGED ORDER.

On November 13, 2019, counsel for the Trustee, Mr. Tinho Mang, sent an email to which he attached the version of the order granting the Cash Collateral Agreement (the "Proposed Order") that would eventually become the Lodged Order. (*See* Declaration of Joshua J. Herndon filed in support of the instant opposition (the "Herndon Declaration"), at ¶ 2, and Exhibits 1 and 2 hereto.) In his November 13, 2019 email, Mr. Mang asked the recipients of the email to respond whether the form of order is approved by 3:00 pm on Friday, November 15, 2019, and provided instructions if the form of order was approved. (*See* Herndon Declaration, at ¶ 2, and Exhibit 1 hereto.)

At 2:45 pm on Friday, November 15, 2019 (prior to Mr. Mang's 3:00 pm deadline), Mr. Herndon sent Mr. Mang an email wherein he stated in relevant part:

"Attached hereto are two versions of the proposed form of order granting the trustee's motion for use of cash collateral with 660 BVD you attached to your email below (the "Order"). One version has my proposed redlined revisions to the Order, and the other version incorporates the redlined revisions. You will see that some extensive formatting-related work will be needed in order to finalize the Order." (*See* Herndon Declaration, at ¶ 3, and Exhibit 1 hereto.)

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

One of the attachments to the above November 15, 2019 email from Mr. Herndon included proposed redlined revisions to the Proposed Order, and the other attachment incorporated those redlined revisions (collectively, the "Proposed Revised Orders"). (*See* Herndon Declaration, at ¶ 3, and Exhibits 1 and 3 hereto.) The subject matter of the Proposed Revised Orders comprise the proposed alternative form of order attached hereto as Exhibit 5.

In response to Mr. Herndon's 2:45 pm November 15, 2019 email above, Mr. Mang sent an email at 2:48 pm on November 15, 2019 wherein he stated: "We'll need approval from the secured lender for the proposed revisions to the cash collateral order. Keith, what do you think about the proposed revisions?" (*See* Herndon Declaration, at ¶ 4, and Exhibit 1 hereto.)

At 2:53 pm on November 15, 2019, Mr. Herndon responded to Mr. Mang's 2:48 pm November 15, 2019 email above by stating: "Thank you for the update. However, with all due respect, my proposed revisions to the cash collateral order correctly reflect the findings the Court made at the November 5, 2019 hearing. That will be true regardless of whomever approves or disapproves of them." (*See* Herndon Declaration, at ¶ 5, and Exhibit 1 hereto.)

At 3:08 pm on November 15, 2019, Mr. Mang responded to Mr. Herndon's 2:53 pm November 15, 2019 email above by stating in relevant part:

> "I do understand your position, and I understand the court's tentative ruling. However, the cash collateral agreement was between Mr. Banner's client and the trustee, and the form of cash collateral order should be approved by the secured lender prior to lodgment of the order, because it is ultimately the secured lender here who is modifying their rights. This order approval procedure is intended to make the order lodgment process more efficient, but if there is going to be a blow-by-blow objection to every modification, we do have the option of lodging an order subject to a filed objection, to be adjudicated by the court. *Cf.* LBR 9021-1." (*See* Herndon Declaration, at ¶ 6, and Exhibit 1 hereto.)

At 3:31 pm on November 15, 2019, Mr. Banner responded to Mr. Mang's 3:08 pm November 15, 2019 email above by stating: "We do not agree with the proposed revisions and ask that you lodge the prior version of the order. The respective

creditors are free to seek entry of an alternative order as provided under the local rules." (*See* Herndon Declaration, at ¶ 7, and Exhibit 1 hereto.)

At 3:37 pm on November 15, 2019, Mr. Herndon responded to Mr. Banner's 3:31 pm November 15, 2019 email above by stressing to Mr. Mang: "**It would be improper for the Trustee to lodge the prior version of the order. <u>The prior version of the order simply does not include all the findings that the Court made when it granted the motion</u>**. I can vouch for that personally since I was present at the hearing." (Emphasis added.) (*See* Herndon Declaration, at ¶ 8, and Exhibit 1 hereto.) Due to the fact that it was getting late on a Friday afternoon, Mr. Herndon proposed in that November 15, 2019 email that Mr. Mang not lodge any version of the order at that time, and instead that the meet and confer process continue to at least the following Monday, November 18, 2019. (*See* Herndon Declaration, at ¶ 8, and Exhibit 1 hereto.)

At 3:46 pm, Mr. Mang responded to Mr. Herndon's 3:37 pm November 15, 2019 email above by asking Mr. Herndon if he would be willing to revise the Proposed Revised Orders to see if there is a version that BVD would agree to. (*See* Herndon Declaration, at ¶ 9, and Exhibit 1 hereto.) In that November 15, 2019 email, Mr. Mang also stated in relevant part: "I understand that Judge Albert may have said a number of things at the hearing, but whether or not those findings are necessary to include in the cash collateral order, that may be a decision that the court has to make if we cannot come to a consensus as to what should go in the order." (*See* Herndon Declaration, at ¶ 9, and Exhibit 1 hereto.)

At 3:51 pm on November 15, 2019, Mr. Herndon responded to Mr. Mang's 3:46 pm November 15, 2019 email above and informed him that he would begin thinking of how he might be able to make further revisions to the Proposed Revised Orders, and that he would follow up with him the following Monday on November 18, 2019. (*See* Herndon Declaration, at ¶ 10, and Exhibit 1 hereto.)

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

CREDITORS' MOTION REQUESTING IMPOSITION OF MONETARY SANCTIONS PURSUANT TO FRBP 9011

At 4:00 pm on Monday, November 18, 2019, Mr. Mang sent Mr. Herndon an email asking whether he had any proposed revisions to the Proposed Revised Orders. (*See* Herndon Declaration, at ¶ 11, and Exhibit 1 hereto.) In that November 18, 2019 email, Mr. Mang also stated: "If we can't come to an agreement, we need to lodge an order ASAP with the notice of lodgment so the disagreements can be resolved." (*See* Herndon Declaration, at ¶ 11, and Exhibit 1 hereto.)

Mr. Mang's November 18, 2019 email above failed to mention that the Trustee had ordered a copy of the Transcript. (*See* Herndon Declaration, at ¶ 12.) Therefore, at 4:05 pm, Mr. Mitnick responded to Mr. Mang's 4:00 pm November 18, 2019 email above by asking: "I believe you ordered a transcript from the hearing. **Shouldn't you wait to submit your proposed order until you have received, and distributed, the transcript**?" (Emphasis added.) (*See* Herndon Declaration, at ¶ 12, and Exhibit 1 hereto.)

At 4:19 pm on November 18, 2019, Mr. Herndon responded to Mr. Mang's 4:00 pm November 18, 2019 email above, and Mr., Mitnick's November 15, 2019 4:05 pm email above, by stating in relevant part:

> "After further consideration, I believe my revised order correctly refers to all the findings the court made at the November 5, 2019 hearing. As such, I do not believe it is necessary or appropriate to make any further revisions. **As for Mr. Mitnick's email immediately below, I agree that it is appropriate that you wait to submit your proposed order until you have received, and distributed, the transcript. I think that is the best choice under the circumstances <u>because the subject matter of the transcript will inform the Trustee as to what should be included in the order he lodges with the Court</u>**." (*See* Herndon Declaration, at ¶ 13, and Exhibit 1 hereto.)

At 4:22 pm on November 18, 2019, Mr. Mang sent Mr. Herndon an email informing him that he would get back to Mr. Herndon the following day on how he would proceed. (*See* Herndon Declaration, at ¶ 14, and Exhibit 1 hereto.)

At 10:19 am on November 19, 2019, Mr. Mang sent an stating in relevant part: "We will be lodging the originally-circulated order (reattached here for your reference) with a notice of lodgment today." (*See* Herndon Declaration, at ¶ 15, and

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

1    Exhibit 1 hereto.) In other words, Mr. Mang made it clear that he had decided to lodge

2    the Proposed Order, which he had also reattached to his November 19, 2019 email.

3    Mr. Mang's 10:19 am November 19, 2019 email also indicated that "Mr.

4    Banner's client has approved" the Proposed Order. (*See* Herndon Declaration, at ¶ 15,

5    and Exhibit 1 hereto.) Indeed, the approval of Mr. Banner's client, BVD, to the

6    Proposed Order is evidenced by the signature of BVD's counsel on the Lodged Order.

7    (*See* Exhibit 4.)

8    At 10:26 am on November 19, 2019, Mr. Mitnick responded to Mr. Mang's

9    10:26 am November 19, 2019 email above by asking: "Will you be circulating the

10   transcript of the hearing that you ordered?" (*See* Herndon Declaration, at ¶ 16, and

11   Exhibit 1 hereto.) In response thereto, Mr. Mang sent an email at 10:38 am on

12   November 19, 2019 wherein he stated: "Haven't received a transcript yet." (*See*

13   Herndon Declaration, at ¶ 16, and Exhibit 1 hereto.) In other words, it is clear that Mr.

14   Mang decided to lodge the Proposed Order with the Court before be received, and

15   much less reviewed, the Transcript.

16   It was the lodging of the Proposed Order that necessitated the Creditors'

17   preparation and filing of the Creditors' Objection to Proposed Order Granting Motion

18   to Approve Cash Collateral Agreement, Compromise, and Post-Petition Financing

19   Lodged by Trustee, as well as the papers and exhibits in support thereof (the

20   "Creditors' Opposition"). (Docs 243, 244, and 245.)

21   On November 27, 2019, in response to the Creditors' Opposition, Mr. Mang,

22   on behalf of the Trustee, filed the Reply to Opposition to Notice of Lodgment of

23   Order. (Doc 250.) In the Reply, Mr. Mang, on behalf of the Trustee, represented that

24   "the order attached to the notice of lodgment accurately reflects the Court's findings

25   and ruling made on the record in granting the motion to approve the stipulation for

26   use of cash collateral between the Trustee and secured creditor, 660 BVD, LLC." (*See*

27   Doc 250, page 1:27 to 2:1.) However, Mr. Mang's representation is demonstrably false

28   for all the reasons set forth above, which are supported by the competent evidence

cited above. Most significantly, based on the excerpts from the Transcript cited above, it is simply untrue, as is represented in the Lodged Order, that the "[t]he Motion is granted and the Stipulation is approved in its entirety." That literally is not the case.

However, just as egregious as the foregoing misrepresentation is Mr. Mang's representation that "[b]efore lodging the order, Trustee's counsel carefully reviewed the transcript from the hearing and verified that the lodged order accurately reflected the Court's ruling." (*See* Doc 250, page 2:11-13.) In making that representation, Mr. Mang failed to inform the Court that, as evidenced by emails above that he and Mr. Mitnick exchanged on November 19, 2019, **he had decided to lodge the Proposed Order with the Court <u>before he even received the Transcript</u>**. Specifically, at 10:19 am on November 19, 2019, Mr. Mang sent an email indicating that he would be lodging the Proposed Order (i.e., the "originally-circulated order") with a notice of lodgment that day. (*See* Exhibit 1 hereto, email sent by Mr. Mang at 10:19 am on November 19, 2019.) In response to an email Mr. Mitnick sent a few minutes later asking Mr. Mang if he would be circulating the Transcript (*See* Exhibit 1 hereto, email sent by Mr. Mitnick at 10:26 am on November 19, 2019), Mr. Mang stated in an email he sent at 10:38 am that he hadn't received the Transcript. (*See* Exhibit 1 hereto, email sent by Mr. Mang at 10:19 am on November 19, 2019.)

As established above, Mr. Mang's representation that he "carefully reviewed" the Transcript to verify that the Proposed Order "accurately reflected the Court's ruling" before lodging the Proposed Order is disproven by the above emails he sent on November 19, 2019, which are included within Exhibit 1 hereto, that clearly show that he had decided to lodge the Proposed Order with the Court before he received the Transcript. In other words, the Transcript did not inform Mr. Mang as to whether or not to lodge the Proposed Order with the Court. Instead, it is clear that Mr. Mang's decision to lodge the Proposed Order with the Court was not at all based on the subject matter of the Transcript.

///

CREDITORS' MOTION REQUESTING IMPOSITION OF MONETARY SANCTIONS PURSUANT TO FRBP 9011

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

IV.    **THE LODGED ORDER SHOULD NOT HAVE BEEN LODGED WITH THE COURT BECAUSE IT INCLUDED FINDINGS THAT THE COURT DID NOT MAKE AT THE NOVEMBER 5, 2019 HEARING, AND OMITTED FINDINGS THAT THE COURT MADE AT THE NOVEMBER 5, 2019 HEARING.**

The Lodged Order should not have been lodged with the Court, in part, because it does not correctly reflect all the material findings that the Court made at the November 5, 2019 hearing when it granted the Cash Collateral Agreement Motion. Specifically, the first item of relief in the Lodged Order states: "The Motion is granted and the Stipulation is approved in its entirety." (*See* Lodged Order, item no. 1, at page 2:8.) As the excerpts of the Transcript cited above show, **the Court <u>did not</u> grant the Motion in its entirety, and it <u>did not</u> approve the Stipulation in its entirety**. **The Court refused to do either of those things <u>even though that is exactly what Mr. Banner requested at the November 5, 2019 hearing</u> as set forth above**. (*See* Transcript at page 13:18-20.)

It is clear from the excerpts of the Transcript cited above that the Court clearly granted the Cash Collateral Agreement Motion, and approved of the Stipulation, subject to the rights of any third party creditor of the Estate with respect to the Estate, including the right to contest the purported pre-petition assignment of UFI's rights to, and interests, in UFI's franchise agreements and rights to collect franchise fees related thereto, to Debtor (collectively, the "UFI Franchise Rights"). In fact, in granting the Cash Collateral Agreement Motion, the Court did not limit those rights in any manner whatsoever.

It is absolutely essential that any final order entered by the Court with respect to the granting of the Cash Collateral Agreement Motion not include a finding that the Cash Collateral Agreement Motion was granted in its entirety, and that the Stipulation was approved in its entirety. That is not only because neither of those assertions is true, but also because such findings would prejudice Creditors, and other creditors of the Estate. Section H of the Stipulation ("Section H") states:

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

CREDITORS' MOTION REQUESTING IMPOSITION OF MONETARY SANCTIONS PURSUANT TO FRBP 9011

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

"As consideration for the Professional Fee Financing and the Creditor Carve Out, the Trustee acknowledges and stipulates on behalf of the Bankruptcy Estate that: (i) the Prepetition Liens are valid, binding, enforceable, and perfected first-in-priority liens, and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (ii) the Secured Debt constitutes a legal, valid, and binding obligation of the Debtor, enforceable in accordance with the terms of the prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (iii) no offsets, defenses, or counterclaims to any of the Secured Debt exists, (iv) no portion of the Secured Debt is subject to avoidance, recharacterization, or involuntary subordination (except to the extent set forth herein) pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (v) the Bankruptcy Estate does not have any valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against 660 BVD with respect to the Prepetition Loan Documents or otherwise, whether arising at law or at equity, including, without limitation, any recharacterization, subordination, disallowance, avoidance or other claim arising under or pursuant to sections 105, 510, 541, or 542 through 553, inclusive, of the Bankruptcy Code, and (vi) the Secured Debt constitutes an allowed secured claim. As further consideration for the Professional Fee Financing and the Creditor Carve Out, the Trustee on behalf of the Bankruptcy Estate fully and irrevocably waives any and all challenge rights with respect to the Secured Debt, the Prepetition Liens, and the Replacement Liens, including but limited to any rights to charge costs or expenses of administration of the Bankruptcy Case under sections 105 or 506(c) of the Bankruptcy Code, except as to the Professional Fee Financing and the Creditor Carve Out provided hereunder." (*See* Doc 173, at page 27:23 to 28:17.)

Based on the material findings that the Court made at the November 5, 2019 hearing as set forth above, it is critical that any final order entered by the Court with respect to the granting of the Cash Collateral Agreement Motion include language make absolutely clear, with respect to Section H, that:

1.  Section H shall apply only to, and be binding on, Trustee as the representative of the Estate;

2.  Section H shall not apply to, or be binding on, any third-party creditor of the Estate; and

3.  Section H shall not preclude, abrogate, limit or impair in any way or manner whatsoever, without limitation, any claims, claims for relief (i.e. avoidance actions under federal or state law), causes of action, subordination proceedings, claim objections, claim reclassification proceedings or any other the rights of any third party

creditor with respect to the Estate.  Among the matters reserved to third party creditors shall be the right to contest the purported pre-petition assignment of UFI's rights to and interests in the UFI Franchise Rights.

The Lodged Order also should not have been lodged with the Court, in part, because it clearly does not include all the material findings that the Court made at the November 5, 2019 hearing when it granted the Cash Collateral Agreement Motion, as set forth above. In one instance, Ms. Masud informed the Court that she would make sure the following finding is included in the order granting the Cash Collateral Agreement Motion:

> "THE COURT: I do want to circle back on the order concluding this proceeding though. **And this -- to amplify what I just got finished saying**. I hear the pain of some of the people out there who say, well, look, the Trustee never should have had this asset because it was fraudulently conveyed. And there is this case, <u>Moore v. Bay</u> -- if you're not familiar with it, look it up. And **I'm prepared to say, the estate will be bound, but third-party offended creditors will not be bound, and they have the right to attack the underlying transaction**, because they're going to finance it themselves. **Unlike this poor estate who has no money, these folks, presuming they have a good case, can take their own shot**." (Emphasis added.) (*See* Transcript at page 11:9-22, and at page 11:25 to 12:1.)

Notwithstanding Ms. Masud's representation to the Court, the Lodged Order omits that material finding.

Additionally, the Court instructed Ms. Masud to include the following material findings in the order granting the Cash Collateral Agreement Motion:

> "THE COURT: **I think that creditors, insofar as they have independent standing to attack any of these transactions as fraudulent conveyances, I think that right should persist. The only body that is bound by this is the estate.** The estate by entering into this agreement is essentially giving a release of claims by the estate, i.e., the Trustee of, I guess, all theories. Preference, equitable subordination, contractual subordination, any of those kind of theories, the estate must stay silent, because they have surrendered their rights for consideration. <u>**That's what I want the order to read**</u>. If offended creditors or franchisees have independent rights, and I'm thinking primarily a fraudulent conveyance, because that's what <u>Moore v. Bay</u> was about, those can persist. And so if they want to independently

CREDITORS' MOTION REQUESTING IMPOSITION OF MONETARY SANCTIONS PURSUANT TO FRBP 9011

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

**finance their claim against this consolidated entity, I guess they still have leave to do that.** But preference, fraudulent conveyance by the estate, equitable subordination by the estate, all those things are sold. All right. So that will be the order. **<u>Would you submit that, Ms. Masud, and be sure that point is clarified</u>**?

MS. MASUD: Absolutely." (Emphasis added.) (*See* Transcript at page 14:4 to 15:2.)

Despite the Court's foregoing express instruction to Ms. Masud, the Lodged Order omits both of those material findings.

It is anticipated that the Trustee may contend that it included the following item in the Lodged Order to refer to the foregoing material findings: "Nothing herein impairs any independent rights held by third parties against 660 BVD and/or third-party entities." (*See* Lodged Order, item no. 6, at page 2:17 to 18.)  Although that item should also be included in any final order entered by the Court with respect to the granting of the Cash Collateral Agreement Motion, it does not seem to include any of the specific material findings referenced above. Each of those specific material findings need to be referenced separately in any final order entered by the Court with respect to the granting of the Cash Collateral Agreement Motion.

Finally, the Lodged Order should not have been lodged with the Court, in part, because it does not include the Court's findings at the November 5, 2019 hearing as set forth above that nothing in the Stipulation, or its order granting the Cash Collateral Agreement Motion, shall approve of, confirm or validate any post-bankruptcy transfer of all or any part of the UFI Franchise Rights to the bankruptcy estate, which shall remain subject to challenge by third party creditors.

///

///

///

///

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

**V.   THE CREDITORS' PROPOSED ORDER RESOLVES THE FOREGOING DEFICIENCIES WITH THE LODGED ORDER, AND INCLUDES ADDITIONAL APPROPRIATE FINDINGS RELATED TO THE GRANTING OF THE CASH COLLATERAL AGREEMENT MOTION.**

Pursuant to LBR 9021-1(b)(3)(B), attached hereto as Exhibit 5 is Creditors' proposed alternative proposed order granting the Cash Collateral Agreement Motion (the "Creditors' Proposed Order").

The Trustee also should have submitted the Creditors' Proposed Order as its final order granting the Cash Collateral Agreement Motion because it correctly states, as the Court found at the November 5, 2019 hearing, that although the Cash Collateral Agreement Motion was granted, and the Stipulation approved, such granting and approval was made subject to the rights of any third party creditor with respect to the Debtor's bankruptcy estate, including the UFI Franchise Rights, which shall not be limited in any manner whatsoever by the approval of the Stipulation. (*See* Creditors' Proposed Order, item nos. 2, 3, 4, and 5, at page 2:22 to 3:10.)

The Trustee should have submitted the Creditors' Proposed Order as its final order granting the Cash Collateral Agreement Motion because it correctly states, as the Court found at the November 5, 2019 hearing, that:

1.   Section H shall apply only to, and be binding on, Trustee as the representative of the Estate;

2.   Section H shall not apply to, or be binding on, any third-party creditor of the Estate; and

3.   Section H shall not preclude, abrogate, limit or impair in any way or manner whatsoever, without limitation, any claims, claims for relief (i.e. avoidance actions under federal or state law), causes of action, subordination proceedings, claim objections, claim reclassification proceedings or any other the rights of any third party creditor with respect to the Estate.  Among the matters reserved to third party creditors shall be the right to contest the purported pre-petition assignment of UFI's rights to

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

and interests in the UFI Franchise Rights. (*See* Creditors' Proposed Order, item no. 1, at page 2:9-19.)

The Trustee also should have submitted the Creditors' Proposed Order as its final order granting the Cash Collateral Agreement Motion because it includes the following additional items that are express material findings the Court made at the November 5, 2019 hearing; or that are related to, and consistent with, the findings that the Court made at the November 5, 2019 as set forth above:

1.    Nothing in the Stipulation, or this Order, shall approve of, confirm or validate any post-bankruptcy transfer of all or any part of the UFI Franchise Rights to the bankruptcy estate, which shall remain subject to challenge by third party creditors (*See* Creditors' Proposed Order, item no. 1, at page 2:19-21; *see also* Transcript, at page 2:24 to 3:20);

2.    This order does not constitute a finding that Debtor, or its bankruptcy estate, is the owner of UFI's rights in various franchise agreements, and rights to collect franchise fees related thereto; (*See* Creditors' Proposed Order, item no. 7, at page 3:13-15.)

3.    No aspect of this order shall limit the subject to the rights of any third party creditor with respect to the Estate, including the UFI Franchise Rights, which shall not be limited in any manner whatsoever by the approval of the Stipulation (*See* Creditors' Proposed Order, item no. 8, at page 3:16-18.) ; and

4.    Any sale of the Debtor's, or the Estate's, assets that purport to include UFI's rights in various franchise agreements, and rights to collect franchise fees related thereto, shall be made subject to the subject to the rights of any third party creditor with respect to the Debtor's bankruptcy estate, including the UFI Franchise Rights, which shall not be limited in any manner whatsoever by the approval of the Stipulation. (*See* Creditors' Proposed Order, item no. 9, at page 3:19-23.)

///

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

**VI.    THE COURT SHOULD, PURSUANT TO FRBP 9011, IMPOSE MONETARY SANCTIONS AGAINST MR. MANG AND HIS FIRM JOINTLY, AND MR. BANNER AND HIS FIRM JOINTLY, IN THE AMOUNT OF $6,300.00 RELATED TO THE LODGING OF THE LODGED ORDER PURSUANT TO FRBP 9011.**

The Federal Rules of Civil Procedure (the "FRCP") rules governing discovery (FRCP 26, and 28 through 37) are incorporated into the Federal Rules of Bankruptcy Procedure (the "FRBP" by reference as FRBP 7026, and 7028 through 7037, and apply to contested motion practice in bankruptcy. (*See* FRBP 9014.)

Related to the above, the FRBP substantially incorporates FRCP 11 into bankruptcy practice as FRBP 9011. FRBP 9011(b) states in relevant part that by presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that:

1.    it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

2.    the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

3.    the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

4.    the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FRBP 9011(c) further states that violations of the above certifications expose the attorneys or law firms to sanctions.

FRBP 9011(a) also empowers the court, upon motion of a party, to sanction an attorney who signs a motion or any other pleading in violation of FRBP 9011. (*See* FRBP 9011(a).) "Absent exceptional circumstances, a law firm shall be held jointly

responsible for violations committed by its partners, associates, and employees." (*See* FRBP 9011(c)(1)(A).)

As for the amount of sanctions the court may award, FRBP 9011 is not intended as a fee-shifting provision or to compensate the innocent party. Its primary purpose is to deter sanctionable conduct. Therefore, "[a] sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." (*See* FRBP 9011(c)(2).) By the same token, the court may assess a monetary sanction it deems appropriate for deterrence purposes *even though the amount exceeds the fees reasonably incurred by the opposing party*.

### 1.    Sanctions Should Be Imposed Against Mr. Banner And Greenberg Glusker Fields Claman & Machtinger LLP Jointly For His Conduct With Respect To The Proposed Order.

As set forth above, Mr. Banner appeared on BVD's behalf at the hearing on November 5, 2019. During that hearing, Mr. Banner expressly requested that the Court grant the Stipulation in its entirety (*see* Transcript at page 13:18-20), which the Court expressly declined to do. (*See* Transcript at page 14:4-24.) Since Mr. Banner had personal knowledge of the foregoing circumstances, it was improper for him to implore Mr. Mang to lodge the Proposed Order because the Proposed Order misrepresented that the Motion was granted, and the Stipulation was approved, in its entirety. **Mr. Banner clearly had personal knowledge that neither of those was true.** Nevertheless, Mr. Banner not only requested that the Proposed Order be lodged with the Court (rather than the Proposed Revised Order, which correctly sets forth the material findings the Court made at the November 5, 2019 hearing), he signed off on the Proposed Order, which was subsequently submitted to the Court as the Lodged Order. (*See* Doc 236.)

Based on Mr. Banner's personal knowledge as set forth above, he knew that the allegations and other factual contentions in the Proposed Order did not have

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

1    evidentiary support; and that the allegations and other factual contentions in the

2    Proposed Order were not likely to have evidentiary support after a reasonable

3    opportunity for further investigation or discovery. That is perfectly clear based on the

4    subject matter of the Transcript as set forth above.

5         Moreover, when Mr. Banner signed off on the Proposed Order, he did so to

6    cause unnecessary delay, or needless increase in the cost of litigation to Creditors.

7    That is evident from the fact that when he suggested to Mr. Mang that he lodge the

8    Proposed Order, he also opined to Mr. Mang that Creditors were "free to seek entry

9    of an alternative order as provided under the local rules." (*See* Exhibit 1, email sent

10   by Mr. Banner at 3:31 pm on November 15, 2019.) Although Creditors were free to

11   seek entry of an alternative order under the local rules (which is unfortunately what

12   his and Mr. Mang's egregious conduct forced Creditors to have to do by preparing and

13   filing the Creditors' Opposition), Creditors should not have had to do so in order to

14   ensure that the Court's final order granting the Cash Collateral Agreement Motion

15   correctly reflected, and included, all of the findings that the Court made at the

16   November 5, 2019 hearing. Mr. Banner clearly understood that if Mr. Mang lodged

17   the Proposed Order, and if Creditors were forced to file an opposition thereto, that

18   would cause an unnecessary delay in these proceedings, and a significant and needless

19   increase in Creditors' cost of litigation in these proceedings. Indeed, the attorneys' fees

20   Mr. Banner and Mr. Mang forced Creditors to incur by preparing and filing the

21   Creditors' Opposition comprise the majority of the monetary sanctions Creditors are

22   requesting herein.

23        For the foregoing reasons, Creditors respectfully request that monetary

24   sanctions be imposed against Mr. Banner and his firm jointly pursuant to FRBP 9011.

25   ///

26   ///

27   ///

28

**2.    Sanctions Should Be Imposed Against Mr. Mang And Marshack Hays LLP Jointly For His Conduct With Respect To The Proposed Order, And For Filing The Lodged Order.**

In some ways, Mr. Mang's conduct is not as egregious as Mr. Banner's, since Mr. Mang did not appear at the November 5, 2019, and therefore he lacked the personal knowledge that Mr. Banner had regarding the November 5, 2019 hearing. However, Mr. Mang's behavior was nevertheless egregious for numerous different reasons, beginning with the fact that the Proposed Order (1) falsely misrepresented that "[t]he Motion is granted and the Stipulation is approved in its entirety," and (2) omitted numerous material findings that the Court made at the November 5, 2019 hearing, including findings that Mr. Mang's colleague, Ms. Masud, told the Court would be included in the order (*see* Transcript at page 11:25 to 12:2), and other findings that the Court instructed Ms. Masud to include in the order. (*See* Transcript at page 14:4 to 15:2.)

Mr. Mang engaged in additional egregious behavior when, after Mr. Herndon provided him with the Proposed Revised Orders, Mr. Mang insisted that it was necessary for him to obtain BVD's approval to the Proposed Revised Orders. (*See* Exhibit 1, email sent by Mr. Mang at 2:48 pm on November 15, 2019.) Worse, after Mr. Herndon suggested to him that the Proposed Revised Orders correctly reflect the material findings the Court made at the November 5, 2019 hearing regardless of whomever approves or disapproves of them (*See* Exhibit 1, email sent by Mr. Herndon at 2:53 pm on November 15, 2019), Mr. Mang continued to improperly insist that BVD's approval was necessary. (*See* Exhibit 1, email sent by Mr. Mang at 3:08 pm on November 15, 2019.) Of course, predictably, Mr. Banner informed Mr. Mang that he did not agree with the Proposed Revised Orders, and he urged Mr. Mang to lodge the Proposed Order instead. (*See* Exhibit 1, email sent by Mr. Banner at 3:31 pm on November 15, 2019.)

Simply put, Mr. Mang was wrong to focus his efforts on obtaining Mr. Banner's consent to the Proposed Revised Orders, rather than focusing his efforts on making

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

sure that the final order granting the Cash Collateral Agreement Motion correctly reflected, and included, all of the findings that the Court made at the November 5, 2019 hearing. Although it obviously would have been preferable for Mr. Banner to have agreed to a final order granting the Cash Collateral Agreement Motion that correctly reflected, and included, all of the findings that the Court made at the November 5, 2019 hearing, **Mr. Mang should have ultimately lodged an order granting the Cash Collateral Agreement Motion that correctly reflected, and included, all of the findings that the Court made at the November 5, 2019 hearing <u>even if Mr. Banner did not agree to that order</u>**. Mr. Mang should not have acquiesced to Mr. Banner's demand that he lodge an order granting the Cash Collateral Agreement Motion that did not correctly reflect, or include, all of the findings that the Court made at the November 5, 2019 hearing.

Mr. Mang's conduct in lodging the Proposed Order is even more egregious given that he did so even after Mr. Herndon strongly suggested to him that it would be improper to lodge the Proposed Order because it did not include all the material findings that the Court made when it granted the Cash Collateral Agreement Motion. (*See* Exhibit 1, email sent by Mr. Herndon at 3:37 pm on November 15, 2019.) In other words, Mr. Mang was clearly put on notice by someone who appeared at the November 5, 2019 hearing that the Proposed Order did not include all the material findings that the Court made when it granted the Cash Collateral Agreement Motion.

Moreover, Mr. Mang insisted on lodging the Proposed Order with the Court even though he had requested, *but had not received*, the Transcript when he decided to lodge the Proposed Order with the Court. Mr. Mang also insisted on lodging the Proposed Order with the Court even though Mr. Herndon and Mr. Mitnick each suggested that Mr. Mang wait to submit a proposed order until after he had received and distributed the Transcript. (*See* Exhibit 1, email sent by Mr. Mitnick at 4:05 pm on November 18, 2019; *see also* Exhibit 1, email sent by Mr. Herndon at 4:19 pm on November 18, 2019.) It was wrong for Mr. Mang to proceed in that manner because

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

*he should have reviewed the Transcript <u>before deciding to lodge the Proposed Order</u> <u>with the Court</u>*, which would have informed him that (1) it would have been improper to lodge the Proposed Order because it did not correct reflect, or include, all of the findings that the Court made at the November 5, 2019 hearing, and (2) that it would have been proper to lodge the Proposed Revised Order because it correctly reflected, and included, all of the findings that the Court made at the November 5, 2019 hearing.

Mr. Mang's foregoing egregious conduct in insisting on lodging the Proposed Order when he did is even more baffling considering that, at the time he lodged the Proposed Order on November 19, 2019, he was already well past the 7 day period during which the Trustee should have lodged a proposed order granting the Cash Collateral Agreement Motion. Therefore. since the timeliness of the lodging was not an issue. at the time Mr. Mang insisted on lodging the Proposed Order with the Court on November 19, 2019, his priority should have been to ensure that he was lodging an order that correctly reflected, and included, all of the findings that the Court made at the November 5, 2019 hearing (which he could have done by reviewing the Transcript and making sure that the order conformed to it), rather than deciding to lodge the Proposed Order before he had even received the Transcript.

Finally, related to Mr. Mang's decision to lodge the Proposed Order before he had even received the Transcript is his omission of that important detail in an attempt to mislead the Court that the Transcript informed his decision to lodge the Proposed Order. That was not the case – **emails that Mr. Mang sent on November 19, 2019 unquestionably establish that he had decided to lodge the Proposed Order <u>before he received the Transcript</u>**.

For all the foregoing reasons, at the time Mr. Mang presented the Lodged Order to the Court, he could not have possibly believed that the allegations and other factual contentions in the Proposed Order had evidentiary support; or that the allegations and other factual contentions in the Proposed Order were likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. That is

CREDITORS' MOTION REQUESTING IMPOSITION OF MONETARY SANCTIONS PURSUANT TO FRBP 9011

perfectly clear based on the subject matter of the Transcript as set forth above, and it should have also been clear based on information that Mr. Mang should have been able to obtain from his colleague, Ms. Masud, who appeared at the November 5, 2019 hearing.

For the foregoing reasons, and as with Mr. Banner, Creditors respectfully request that monetary sanctions be imposed against Mr. Mang and his firm jointly pursuant to FRBP 9011.

## VII.  CONCLUSION.

For the reasons set forth herein, Creditors respectfully request that the Court enter the Creditors' Proposed Order as its final order granting the Cash Collateral Agreement Motion.

Creditors also respectfully request that the Court impose monetary sanctions against Mr. Banner and his firm jointly, and against Mr. Mang and his firm jointly, in the amount of $6,300.00, the amount of the fees that Creditors' reasonably incurred. (*See* Herndon Declaration, at ¶¶ 21 and 22.)

Dated:  January 21, 2020                **GLOBAL LEGAL LAW FIRM**

By: _____
Christopher R. Dryden, Esq. (SBN 234476)
R. Michael Ghilezan, Esq.
Attorneys for Creditors WILLIAM and
MONICA HARTER; HELP THE ONE,
INC.

GLOBAL LEGAL LAW FIRM
380 STEVENS AVENUE, SUITE 311
SOLANA BEACH, CALIFORNIA 92075
(888) 846-8901

CREDITORS' MOTION REQUESTING IMPOSITION OF MONETARY SANCTIONS PURSUANT TO FRBP 9011