D. EDWARD HAYS, #162507
ehays@marshackhays.com
TINHO MANG, #322146
tmang@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, California 92620-5749
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Chapter 7 Trustee,
RICHARD A. MARSHACK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:19-bk-12516-TA |
| ULTIMATE BRANDS, INC., | Chapter 7 |
| Debtor. | EXHIBITS "1" AND "2" TO ORDER GRANTING TRUSTEE'S SALE MOTION AND (1) AUTHORIZING SALE (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; (2) DETERMINING THE BUYER AS A GOOD FAITH PURCHASER UNDER 11 U.S.C. § 363(M); AND (3) WAIVING THE 14-DAY STAY OF FRBP 6004 |
| | [Motion - Docket No. 247] |
| | [ORDER LODGED 01/24/2020] |
| | Final Sale Hearing<br>Date:        January 7, 2020<br>Time:        11:00 a.m.<br>Ctrm:        5B<br>Location:   United States Bankruptcy Court<br>411 West Fourth Street<br>Santa Ana, CA 92701-4593 |

/ / /

/ / /

/ / /

/ / /

EXHIBIT "1"

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Judge Theodor Albert, Presiding**
**Courtroom 5B Calendar**

---

Tuesday, January 7, 2020                                    Hearing Room        5B

---

11:00 AM
**8:19-12516    Ultimate Brands Inc**                              **Chapter 7**

**#13.00**    Trustee's Motion For Order: Authorizing  Sale Of Substantially All Of Debtor's
Assets Subject To Overbid (A) Outside The Ordinary Course Of Business; (B)
Free And Clear Of Liens, Claims And Encumbrances; (C) For Determination Of
Good Faith Purchaser Under 11 USC Section 363(M); And (D) Waiver Of The
14-Day Stay Periods Set Forth In Bankruptcy Rule 6004(H)
**(cont'd from 12-17-19)**

Docket        247

**Tentative Ruling:**

Tentative for 1/7/20:

This is the Trustee's motion for approval of a sale, free and clear of
liens, of certain intellectual property assets of the estate to the Unofficial
Committee of Ultimate Brands Franchisees Cooperative Trust ("Buyer") under
§363(f). The motion is supported by the Unofficial Committee of Franchisees,
including the former potential purchaser, John-Michael Stern, and has
received consent of the blanket lienholder, 660 BVD, LLC.  The motion is
again opposed by franchisees/creditors William and Monica Harter and Help
the One, Inc. who are also apparently joined by Michael John Patterson and
Wheatstrong Enterprises (collectively "Opponents"). The reader should also
review the memorandum on calendar item #14 which discusses the
settlement because many of the issues overlap.

Trustee seeks an order that provides that:

1. The Motion is granted;

2. The Trustee is authorized to sell the Purchased Assets listed in
Schedule A to the APA attached to the Marshack Declaration as
Exhibit "1" to the Buyer outside the ordinary course of business under
11 U.S.C. § 363(b);

3. The sale is free and clear of all liens, claims, and interests pursuant
to 11 U.S.C. §363(f), after consideration of the objections (if any)

---

Exhibit "1"
Page 5

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Judge Theodor Albert, Presiding**
**Courtroom 5B Calendar**

---

**Tuesday, January 7, 2020**                                    **Hearing Room**      **5B**

---

11:00 AM
**CONT...**      **Ultimate Brands Inc**                                    **Chapter 7**
raised to the sale by any duly-noticed creditors or parties-in-interest;

4. Notice to all creditors and parties in interest is adequate;

5. The Buyer is determined to be a good faith purchaser under 11 U.S.C. § 363(m);

6. The 14-day period of FRBP 6004(h) is waived;

Through this motion, Trustee intends to sell the following property of the Estate to Buyer:

- All 18|8 trademarks, service marks, and related commercial symbols

- The 18|8 Brand System including its distinctive format, methods, procedures, signs, designs, layouts, standards, and specifications

- Confidential Information relating to developing and operating 18|8 Salons including, without limitation:

    o    Training and operations materials and manuals;

    o    Methods, formats, specifications, standards, systems, procedures, sales and marketing techniques in developing and operating 18|8 Salons;

    o    Marketing and advertising materials;

    o    All computer software and other technology that is proprietary to the Company;

    o    Customer lists, POS databases, communication and retention programs, and data used or generated in connection with those programs; and

    o    Graphic designs and related intellectual property.

Under the Asset Purchase Agreement ("APA"), the Buyer was required

---

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Judge Theodor Albert, Presiding**
**Courtroom 5B Calendar**

---

**Tuesday, January 7, 2020**                                          **Hearing Room      5B**

---

<u>11:00 AM</u>
**CONT...        Ultimate Brands Inc**                                                        **Chapter 7**

to fund the $155,000 cash component of the proposed sale prior to the hearing on December 17, 2019 (hearing now Jan. 7). The Buyer duly funded the $155,000 cash component, which is being held in a segregated account by the Trustee. Paragraph 15 of the APA provides that the sole condition precedent to the effectiveness of the sale is "Bankruptcy Court approval of this Agreement and the Sale Motion… provided, however that, if the Court approves the Agreement without approving the compromise and settlement provided for in paragraphs 5-11, the Agreement shall take effect except with respect to those paragraphs."

### 1.  Standards for Approving A Sale

Section 363(b) provides that after notice and a hearing, a trustee may sell property of the estate out of the ordinary course of business. Courts have held that in order to approve a sale, a court must find that the trustee demonstrates a valid business justification, and that the sale is in the best interest of the estate. *In re 240 North Brand Partners, Ltd*., 200 B.R. 653 (9th Cir. BAP 1996); *In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830, 841-42 (Bankr. C.D. Cal. 1991). A sale is in the best interest of the estate when it is fair and reasonable, it has been given adequate marketing, it has been advertised and negotiated in good faith, the purchaser is proceeding in good faith, and it is an arm's length transaction. *In re Wilde Horse Enterprises, Inc*., 136 B.R. at 841. The *Wilde Horse* court goes on to explain that good faith encompasses fair value and further speaks to the integrity of the transaction. Bad faith would include collusion between the seller and buyer or any attempt to take unfair advantage of any potential purchasers. *Id.* at 842.

### 2.  The Sale Should Be Approved

Trustee argues that if this sale is not consummated, he will have no choice but to issue a "no-asset report."  This court has already remarked that this is a melting ice cube and has opined that in situations such as this, a sale, which garners at least something for creditors, is probably better than the alternative. Since the last hearing on December 17, 2019, a few of the noted deficiencies have apparently been remedied.  The identity of the Buyer has become clear.  The blanket lienholder, 660 BVD, LLC has given its conditional consent to the sale pursuant to a stipulation with Trustee (*See* Dkt. 295).  The marketing efforts have also become clearer since the last

---

Exhibit "1"
Page 7

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Judge Theodor Albert, Presiding**
**Courtroom 5B Calendar**

---

**Tuesday, January 7, 2020**                                                                **Hearing Room        5B**

---

11:00 AM
**CONT...        Ultimate Brands Inc**                                                                          **Chapter 7**

hearing.  As the court understands, Trustee had a couple of potentially
interested buyers, including John-Michael Stern.  However, as noted in detail
in the motion and supporting declarations, the potential buyers all had specific
circumstances and requirements that would have needed to be in place
before any serious negotiations would begin in earnest.  These requirements
proved infeasible for a multitude of reasons, which caused the interested
buyers and Trustee to mutually abandon a potential sale of all Debtor's
assets.  Instead, Buyer made an offer to purchase only certain intellectual
property assets for the sum of $155,000, outbidding Mr. Stern.  It should be
noted that Mr. Stern filed a declaration in support of the sale motion detailing
why his initial soft bid of $750,000 proved to be unworkable. (*See* Dkt. 294)

        Buyer seeks a §363(m) good faith determination, based on the details
of the bidding and negotiations process outlined in the Graff and Stern
declarations (*See* Dkt. 293 and 294 respectively), which Buyer asserts
demonstrates the absence of collusion between Buyer and Trustee or any
unfair advantage.  Furthermore, Buyer asserts that the negotiations to
purchase Debtor's assets began in earnest back in October and were not yet
finalized when the initial hearing on the motion occurred, but Trustee and
Buyer did not want to rush the negotiations. Both Buyer and Trustee were
represented by independent counsel during the negotiations.  Therefore,
Trustee and Buyer have likely done enough to demonstrate both their mutual
good faith and that the sale was negotiated at arms' length.

        Trustee and Buyer also assert that the purchase price of $155,000
likely exceeds the fair market value of assets to be sold.  In support of this
assertion, Buyer points out that the Debtor's franchise model is fatally flawed
and was the product of fraud from the outset. This is shown, according to
Buyer, by the fact that even though Debtor charged unaffordable royalties
while providing inadequate services to the franchisees, Debtor still could not
sustain its franchise business. This fact alone, Buyer asserts, makes the IP
nearly valueless to a non-franchisee third party.  Therefore, the only parties
that would have any interest in the assets would be those who are already
invested in the franchise business.  Therefore, it is not surprising that the only
real interested came from Buyer and another Franchisee, Mr. Stern.

        The Opponents believe that this motion should be denied due to fear
that a sale may extinguish any potential claims or rights they may have,

# United States Bankruptcy Court
## Central District of California
### Santa Ana
### Judge Theodor Albert, Presiding
### Courtroom 5B Calendar

---

**Tuesday, January 7, 2020**                                    **Hearing Room    5B**

---

11:00 AM

**CONT...    Ultimate Brands Inc**                                    Chapter 7

especially concerning a right to challenge the pre-petition assignment of UFI's Franchise Agreements to Debtor, which the Opponents believe was an avoidable fraudulent conveyance.  The Opponents also take issue with the alleged low level of detail and evidentiary support provided by Trustee in the motion. Further, Opponents argue that the motion fails to demonstrate sufficient marketing efforts and/or evidence that proper measures were taken to market the assets.  The objections are largely quite like those in the opposition to the compromise motion.

Trustee argues that, with respect to the Opponents' assertion that they have a viable fraudulent conveyance action, there is no Ninth Circuit case which holds that this is a sufficient interest in property to which an unliquidated, unsecured fraudulent conveyance action may attach and survive a bankruptcy sale or even implicate the provisions of §363(f).  Trustee asserts that he is selling the equivalent of a quitclaim to the Buyer, and makes no representation, guarantee, or warranty as to the Debtor's right in the Purchased Assets.  Trustee further argues that because he is essentially quitclaiming the Estate's interest in such assets to the Buyer, any opposition to the sale as to the Trustee compromising or selling third parties' rights is unwarranted and unmeritorious; the Trustee cannot and is not selling something that the Estate does not own.

Regarding the potential fraudulent transfer action, Trustee points out that under 11 U.S.C. §363(p)(2), any objecting creditor has the burden of proving the extent of their validity, priority, or extent of any claimed interest in the specific assets subject to the Trustee's proposed sale. Trustee also cites *In re Kellogg-Taxe*, 2014 Bankr. LEXIS 1033 at *22 (Bankr. C.D. Cal. 2014); accord, *SEC v. Capital Cove Bancorp LLC*, 2015 U.S. Dist. LEXIS 174856 at *15-16 (C.D. Cal. 2015) for the proposition that where a free and clear sale is proposed under 11 U.S.C. § 363(f)(4), "[t]he parties must provide some factual grounds to show some objective basis for the dispute."  Further, Trustee cites *In re QDOS, Inc.*, 591 B.R. 843, 848-50 (Bankr. C.D. Cal. 2018), (rev'd on procedural grounds by *Hayden v. QDOS, Inc. (In re QDOS, Inc.)*, 607 B.R. 338 (B.A.P. 9th Cir. 2019)) for the proposition that "'a partially disputed claim is a disputed claim' is not only true, it is necessarily true." Trustee notes that the only asserted interest by the Opponents is the possibility that they might be able to prevail in a later fraudulent conveyance action against UFI and the Debtor (to the Trustee's and the court's

---

Exhibit "1"
Page 9

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Judge Theodor Albert, Presiding**
**Courtroom 5B Calendar**

---

**Tuesday, January 7, 2020**                                    **Hearing Room        5B**

---

<u>11:00 AM</u>
**CONT...        Ultimate Brands Inc**                                              **Chapter 7**

knowledge, no such action is underway), and they seek to preserve their rights in the Purchased Assets or the Royalty Component. This being the case, Trustee concludes that these unliquidated, unsecured, contingent hypothetical judgment creditors have no interest in the Purchased Assets or the Royalty Component which survives the proposed sale.  Opponents analysis could only make any sense if viewed as an attachment, which is not before the court.

Given the specific circumstances of this case and the case law cited above, it is inappropriate to hold up a sale, which seems increasingly necessary, because a minority of creditors might want to bring an action at a later time.  Also, nothing in the Opponents' claims amounts to an interest *in the assets* to be sold which could or should hold up a sale.

### 3.  Waiver of the 14-day Stay

Trustee and the Buyer both request that the court waive the 14-day stay imposed by FRBP 6004(h) to give a sense of reassurance and finality to these proceedings.  Trustee cites <u>Collier On Bankruptcy</u> ¶ 6004.11 (16th ed. 2019) for the proposition that "if an objection [to the sale] has been filed and is overruled, the court should eliminate or reduce the 14-day stay period only upon a showing that there is a sufficient business need to close the transaction within the 14-day period and the interests of the objecting party, taking into account the likelihood of success on appeal, are sufficiently protected."

As noted, 660 BVD, LLC's objection seems to have been mollified through stipulation, and so long as the conditions outlined in that stipulation are observed, there is little likelihood that 660 BVD would lodge an appeal were this motion to be granted.  As noted above, Opponents may very well attempt to appeal this motion if it is granted despite the relative weakness of their opposition, which makes the likelihood of success on that appeal uncertain at best.  However, balancing the likelihood of a successful appeal against the melting ice cube problem immediately before the court, granting a waiver of the 14-day stay is likely appropriate.  In sum, the Trustee has no alternative to this sale and the filing of a "no asset report" benefits no one.

*Grant*

---

Exhibit "1"
Page 10

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Judge Theodor Albert, Presiding**
**Courtroom 5B Calendar**

---

Tuesday, January 7, 2020                                     Hearing Room      **5B**

---

11:00 AM
**CONT...**      **Ultimate Brands Inc**                                              **Chapter 7**

-----------------------------------------------------------------------

Tentative for 12/17/19:

        This is the Trustee's motion for approval of a sale, free and clear of
liens, of substantially all the assets of the estate under §363(f).  As originally
noticed in the November 26 motion, neither the proposed buyer nor the price
was given.  The buyer(s) were only identified as "two interested parties."  The
Trustee freely admitted that as of his motion no sale agreement had yet been
reached. The motion was initially opposed by franchisees/creditors William
and Monica Harter and Help the One, Inc. and then by Michael John
Patterson and Wheatstrong Enterprises. Some of the uncertainty was clarified
only in the trustee's "Reply" filed December 10. In the Reply it develops that
the proposed price is $155,000 and, if a proposed Settlement and Asset
Purchase Agreement is in fact approved after a Rule 9019 motion, a
discounted payment to the estate of accrued royalties (approximately
$95,444) and a rejection of the affected franchise agreements.  The parties
are still not clearly identified except as an "Unofficial Committee of Ultimate
Brand Franchisees" and a "Cooperative Trust" comprised of unnamed
members of the franchisee group (there is a "Schedule D" list following which
one supposes are the members although this is never stated). Approval of the
purchase and Settlement Agreement is made a precondition as to only the
$155,000 portion of the price. The Trustee requests not only a Rule 6004
waiver but a finding of §363(m) good faith as well.  The secured creditor 660
BVD, LLC filed an "objection" on December 12 and requests a continuance.

        The Trustee argues that unless the Debtor's business operations are
transferred to an interested party who is willing to pay fair value for such
operations before December 20, 2019, the value of the estate is likely to be
negatively impacted because the franchisees will no longer receive any
support from the Trustee (upon the lapse of authorization to operate) and
therefore will likely de-brand or shut down entirely.

Exhibit "1"
Page 11

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Judge Theodor Albert, Presiding**
**Courtroom 5B Calendar**

---

**Tuesday, January 7, 2020**                                        **Hearing Room        5B**

11:00 AM
**CONT...      Ultimate Brands Inc**                                              **Chapter 7**

Section 363(b) provides that after notice and a hearing, a trustee may
sell property of the estate out of the ordinary course of business. Courts have
held that in order to approve a sale, a court must find that the trustee
demonstrates a valid business justification, and that the sale is in the best
interest of the estate. *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653 (9th
Cir. BAP 1996); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841-42
(Bankr. C.D. Cal. 1991). A sale is in the best interest of the estate when it is
fair and reasonable, it has been given adequate marketing, it has been
advertised and negotiated in good faith, the purchaser is proceeding in good
faith, and it is an arm's length transaction. *Wilde Horse Enterprises, Inc.*, 136
B.R. at 841. The *Wilde Horse* court goes on to explain that good faith
encompasses fair value and further speaks to the integrity of the transaction.
Bad faith would include collusion between the seller and buyer or any attempt
to take unfair advantage of any potential purchasers. *Id*. at 842. Section
363(b) provides that after notice and a hearing, a trustee may sell property of
the estate out of the ordinary course of business. Courts have held that in
order to approve a sale, a court must find that the trustee demonstrates a
valid business justification, and that the sale is in the best interest of the
estate. The *Wilde Horse* court goes on to explain that good faith
encompasses fair value and further speaks to the integrity of the transaction.
Bad faith would include collusion between the seller and buyer or any attempt
to take unfair advantage of any potential purchasers. *Id*. at 842.

Moreover, the Trustee seeks to sell free of liens under §363(f),
arguing, apparently, that all of the liens are subject to *bona fide* dispute,
presumably including 660 BVD's.  The Trustee does not include a lien by lien
analysis, so the argument is murky at best.

To say the least, this is an unusual motion. As the opposition
strenuously argues, and Trustee, along with his joining parties, tacitly admit,
the motion fails to comply with numerous provisions of the local rules
governing the sale of assets (See LBR 6004-1(c)(3)). But, they argue, there is
strong necessity that should justify cutting whatever corners need to be cut in

Exhibit "1"
Page 12

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Judge Theodor Albert, Presiding**
**Courtroom 5B Calendar**

---

**Tuesday, January 7, 2020**                                          **Hearing Room       5B**

---

11:00 AM
**CONT...        Ultimate Brands Inc**                                                    **Chapter 7**

order to get to some money. Alternatively, citing *Morrissey Construction Co. v. Gantes (In re Gantes),* 2016 Bankr. LEXIS 920 at *22 (B.A.P. 9th Cir. 2016), the Trustee argues that non-compliance with the rules does not affect any substantive right of the objectors and so the court can disregard non-compliance.

The opponents also raise concerns about what will happen to their claims, which allege that the transfer by assignment of Ultimate Franchise, Inc.'s (UFI's) assets to Debtor on the eve of bankruptcy was a fraudulent conveyance, making the assignment invalid.  The opponents are concerned that the sale could potentially cutoff their ability to pursue the fraudulent transfer claim.  In addition to the above procedural infirmities, objecting creditor, 660 BVD points out that the Trustee has only disclosed a potential buyer (Purchasing Franchisees) in his Reply.  Further, the assets to be sold are not all of Debtor's assets, but rather certain intellectual property and accompanying rights of the company, that would, in effect, allow the purchasers to "poach" Debtor's franchise business without incurring any of the obligations of existing franchise agreements.  The Reply also makes mention of a settlement agreement, which is an essential component of the proposed sale, but the settlement agreement has not been approved by this court pursuant to Rule 9019.  660 BVD also argues that there is reason to doubt that any purported auction would proceed in good faith and be truly open as there is evidence that a prior potential buyer, a Mr. Jean Michel Stern, attempted to purchase the Debtor's assets for $750,000 in or around August of 2019, but the Purchasing Franchisees reportedly used their leverage as both interested buyers, and as a contract counterparty to resist and chill a deal with Mr. Stern.  The Purchasing Franchisees then reportedly entered a deal purchasing selected assets for a much lower price than the $750,000 offered by Mr. Stern (but which is apparently not the deal at bar?).

The opponents also argue that the sale does not appear to be supported by a valid business purpose aside from getting a sale finalized before the alleged doomsday of December 20, which is the deadline to

---

Exhibit "1"
Page 13

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Judge Theodor Albert, Presiding**
**Courtroom 5B Calendar**

---

**Tuesday, January 7, 2020**                                    **Hearing Room    5B**

<u>11:00 AM</u>
**CONT...        Ultimate Brands Inc**                                          **Chapter 7**

assume or reject executory contracts. The opposition argues that, regarding
the December 20 deadline that Trustee mentions in his business justification,
it is absolutely clear that the January 31, 2020 date that the Trustee
requested in the Operation Motion was shortened to December 20, 2019 only
because of the purported "deal" between the Trustee and the Committee, and
only at the insistence of counsel for the Trustee and the Committee. Rather
than the court setting the purported December 20, 2019 deadline on its own
and insisting that it remain in place at all costs, the court simply acquiesced to
a request by the Trustee's counsel to move the January 31, 2020 date to
December 20, 2019, or so the argument goes.  The opposition is quick to
point out that the purported "deal" never materialized. As such, and in the
absence of that purported "deal," there is, apparently, no reason for the
December 20, 2019 "deadline" to remain in place at this time.

Lastly, the opponents argue that the facts related above demonstrate
that the sale is not proceeding in good faith pursuant to §363(m).  As a
remedy, the opposition seeks a continuance to allow the court to fully
understand the scope of the sale, choose whether to approve the settlement
agreement, and allow the Trustee to bring this motion in line with the various
requirements of the LBRs and the Bankruptcy Code.

Regarding a good faith determination, Trustee acknowledges the
concerns raised by the opposition and the policy behind §363(m), but argues,
citing no authority, that failing to obtain a good faith determination prior to the
sale is not cause to deny this motion. Instead, Trustee argues that, because
the sale will be in the form of a public auction, a request for a good faith
determination can be filed after the sale when the buyer is known. Trustee
also argues that a waiver of the 14-day stay imposed by FRBP 6004(h) is
warranted because the Committee, currently operating over two dozen 18|8
franchises, seeks certainty regarding the license and use of certain
intellectual property assets in connection with their businesses. If the 14-day
stay of FRBP 6004(h) is not waived in connection with this sale of all the
estate's interest in certain assets, argues the Trustee, the 18|8 franchisees

---

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Judge Theodor Albert, Presiding**
**Courtroom 5B Calendar**

**Tuesday, January 7, 2020**                                          **Hearing Room        5B**

11:00 AM
**CONT...        Ultimate Brands Inc**                                              **Chapter 7**

are likely to close their own franchises given the continuing uncertainty of who owns what asset.

Normally, the court is very deferential to the Trustee's business judgment, but not here.  The Trustee can also be forgiven some of the apparent panic in trying to rush through what amounts to a sale of substantially all assets free of liens on effectively only 10 days' notice.  He apparently believes that December 20 is an impenetrable barrier, after which there will be nothing left to sell.  But such a panicked rush is not the only or even the preferred remedy. On a complicated, contentious, multi-part motion involving requests for an order under §363(f) free of liens, a finding of good faith and waiver of the Rule 6004 stay, the time pressure is real but vastly exaggerated, while the due process concerns are also profound and not adequately addressed. The court sees no reason not to extend both the sale, deadline to assume or reject and the operating authority until this matter can be heard on more regular notice in January.  It's not as if this were a simple motion or the timetable were quite as dire as predicted.  Rather, the better part of valor is to continue this sale to coincide with the Rule 9019 motion. The moving parts have been much better defined by now and that will afford more reasonable due process.

However, the objectors must also realize that this estate apparently lacks viable alternatives and so the court will have to be convinced why a less than ideal sale is not still better than nothing at that time.

*Continue*

| **Party Information** |
|---|

**Debtor(s):**

Ultimate Brands Inc                          Represented By

Exhibit "1"
Page 15

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Judge Theodor Albert, Presiding**
**Courtroom 5B Calendar**

---

**Tuesday, January 7, 2020**                                                    **Hearing Room        5B**

---

<u>11:00 AM</u>
**CONT...**        **Ultimate Brands Inc**                                                    **Chapter 7**
                                                            Julie J Villalobos

    <u>**Trustee(s):**</u>

      Richard A Marshack (TR)                        Represented By
                                                            D Edward Hays
                                                            David  Wood
                                                            Tinho  Mang

Exhibit "1"
Page 16

Exhibit "2"

# SETTLEMENT AND ASSET PURCHASE AGREEMENT

This Settlement and Asset Purchase Agreement ("Agreement") is entered into by and between RICHARD A. MARSHACK, in his capacity as Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Ultimate Brands, Inc. ("Debtor"), on the one hand, and the Unofficial Committee of Ultimate Brands Franchisees ("Committee") and Unofficial Committee of Ultimate Brands Franchisees Cooperative Trust ("Buyer"), on the other hand. Trustee, Committee, and Buyer are collectively referred to as the "Parties" or individually as a "Party." A schedule of all franchisees comprising members of the Committee is appended as Exhibit "1" and incorporated by reference.

## Recitals

A.      On June 28, 2019, Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code. On August 8, 2019, Richard A. Marshack (previously defined as "Trustee") was appointed as the Chapter 11 trustee.

B.      On August 29, 2019, the bankruptcy court entered an order converting the case to Chapter 7. The Trustee was reappointed as the Chapter 7 Trustee.

C.      Prior to the petition date, all of the interest(s) of Debtor's affiliate, Ultimate Franchises, Inc. ("UFI"), in certain franchise agreements were assigned to the Debtor.

D.      Since the Trustee's appointment, he has not invoiced any franchisee for royalty fees or marketing fees, although some may have been voluntarily paid by individual franchisees.

E.      Certain creditors of the Debtor and/or UFI dispute the validity of the assignment of assets or interests of UFI to the Debtor.

F.      On November 26, 2019, the Trustee filed its Motion for Order Authorizing Sale of Substantially All of Debtor's Assets (the "Sale Motion").

G.      The Trustee has agreed to sell all right, title, and interest of the Debtor in certain assets to Buyer as defined in Paragraph 2 below, subject to overbid, and under the terms of this Agreement.

## Agreement

NOW, THEREFORE, in consideration of the mutual agreements and covenants set forth in this Agreement, and for other good and valuable consideration, the sufficiency and adequacy of which is acknowledged, the Parties agree as follows:

1.      **Rules of Construction.** Each of the Parties acknowledges that it has participated in the drafting of this Agreement and reviewed the terms of the Agreement and, as such, no rule of construction shall apply in any interpretation of this Agreement which might result in this Agreement being construed in favor or against either of them, including without limitation, any rule of construction to the effect that ambiguities ought to be resolved against the drafting party.

2.      **Purchased Assets.** The Trustee shall transfer to Buyer all right, title, and interest of the Debtor in all assets listed in **Schedule A** ("Purchased Assets"). The Purchased Assets shall be transferred to Buyer where-is, as-is, and with all faults and defects, and the Trustee makes no representation or warranty as to the Debtor's current right, title, and interest in the Purchased Assets. Buyer acknowledges that the Trustee is making no warranty as to the Estate's right, title, and interest in the Purchased Assets.

3.      **No Representation or Warranty.** The Trustee makes no representations or warranties as to the Purchased Assets except that Trustee warrants and represents he has not previously conveyed any of the Purchased Assets. Buyer understands that the transfer of the Purchased Assets is as-is, where-is, and with all faults and defects.

4.      **Cash Payment.** Buyer shall fund an initial cash payment of $155,000 ("Cash Payment") to the Trustee no later than six days prior to December 17, 2019. The Trustee shall hold the Cash Payment in a segregated account and such Cash Payment shall not constitute property of the Estate unless and until the Closing Date.  In the event that the Trustee deems another bidder the Successful Bidder under paragraph 18 below or the Court denies the Trustee's motion for an order consistent with paragraph 15 below, the Trustee will return the Cash Payment within two business days of said event.

5.      **Royalty Payments.** The Committee, on behalf of its members, agrees to pay all outstanding postpetition royalties under its members' franchise agreements (the "Franchise Agreements") at the reduced rate of 3.5% of franchisees' gross revenues in accordance with traditional accounting practices ("Compromised Postpetition Royalties") for the period of June 28, 2019, through and including December 1, 2019 ("Postpetition Royalty Period"). The Compromised Postpetition Royalties shall be subject to adjustment for corporately-issued gift cards and cross-center membership reductions in line with past practices, to the extent shown in **Schedule B**.  Each individual member of the Committee which owes prepetition royalties further agrees to pay all outstanding prepetition amounts, subject to their individual agreement with the Trustee as to the amounts owed ("Prepetition Royalties") without any offset, defense, or other claim to reduce such amounts, other than as shown on **Schedule C-1**, and subject to approval of any compromise under Federal Rule of Bankruptcy Procedure 9019.  Each franchisee shall be responsible for paying only its own royalties.  No franchisee shall be liable for the obligations of any other franchisee, and the Buyer shall not be liable for the obligations of any franchisee.

The Committee and Buyer shall cooperate in good faith with the Trustee to compile information about the amount of Prepetition Royalties and Compromised Postpetition Royalties. The Trustee agrees that the amount of Prepetition Royalties owed by all members of the Committee not listed on the spreadsheet attached as Exhibit "2" shall be $0.00. The Trustee further agrees that he shall not seek Prepetition Royalties from any member of the Committee in excess of the amount listed on Exhibit 2. In exchange for the Compromised Postpetition Royalties and Prepetition Royalties, each franchisee will be deemed to have purchased all rights of the Estate to collect royalties from such franchisee.  Together, the Compromised Postpetition Royalties and Prepetition Royalties shall be referred to as the "Royalty Component."

6.      **No Offset or Defense.** No franchisee shall be entitled to exercise any right of offset, mitigation, recoupment, or other defense under any legal, statutory, or equitable theory, for any

portion of the Royalty Component. The Committee waives on behalf of its franchisees all claims against the Estate, whether arising under contract, agreement, California Franchise Investment Law or other federal or state statute, regulation, common law, tort, the Bankruptcy Code, whether arising under law or equity, known or unknown.

7. **Validity of Assignment.** As between the Parties, the Parties agree and acknowledge that the pre-petition assignment of certain assets to the Debtor from UFI was valid, and that the Debtor is the sole entity authorized to operate the Debtor's business and serve as a franchisor under the Franchise Agreements, as assignee of such agreements and business assets from UFI, and waive any and all claims contesting the validity of such assignment to the Debtor and the Debtor's entitlement to any of the Purchased Assets.

8. **Waiver under Civil Code § 1542.** The Committee acknowledges that, except as expressly stated in this Agreement, they may be releasing unknown claims related to the Royalty Component and any other claims, defenses, or causes of action related to the Royalty Component, and after reviewing and comprehending the scope of Civil Code § 1542, reproduced in full below, expressly waive all rights under California Civil Code section 1542 which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

9. **Consent of Franchisees from Royalty Component.** Unless an individual member of the Committee disagreeing with any portion of the Royalty Component informs the Trustee in writing prior to the execution of this Agreement, with any and all such writing(s) appended to this Agreement in **Schedule C-2**, all members of the Committee shall be deemed to accept and consent to payment of the Royalty Component upon the signing of this Agreement by the Committee's designated representative(s), subject to paragraph 5. Committee members listed in **Schedule C-2** are excepted from paragraphs 5-11 of this Agreement. The Committee represents and warrants that the majority of Committee members in number and amount will accept the Royalty Component. For clarity, the list of all members of the Committee participating in and accepting the Royalty Component are listed in **Schedule D**, and each agree to pay the Royalty Component in the amounts listed in **Schedule D**.

10. **Payment of Royalty Component.** All payments for the Compromised Postpetition Royalties shall be made in full within two business days of the date that an order approving the Royalty Component becomes final and non-appealable, or such other date(s) as the Trustee and a franchisee may agree. All payments for Prepetition Royalties shall be made immediately upon agreement between each franchisee and the Trustee as to the amount owed, or such other date(s) as the Trustee and a franchisee may agree. Except for the payment of the Royalty Component, no franchisee shall have any further obligations to the Debtor or under any Franchise Agreement. Other than payment of the Royalty Component, the Trustee waives any and all claims against the members of the Committee in connection with the Purchased Assets and the Franchise Agreements. The Trustee shall deposit all payments of the Royalty Component into a segregated

account ("Royalty Account") along with any other payment of pre-petition or post-petition royalties not otherwise included in the Royalty Component (if any), and such Royalty Account shall be subject to third-party claims (if any) to the funds held within, with such claims to be resolved prior to payment of funds from the Royalty Account. To the extent that claims arising from the Franchise Agreements may exist, the Royalty Component shall be free & clear of such claims, with those claims attaching to the Royalty Account. Timely payment of the Royalty Component is a condition precedent to the effectiveness of the Trustee's waivers in the above paragraphs. Upon a franchisee's failure to make a timely payment of the Royalty Component, the Trustee shall provide written notification of default to such franchisee, and such franchisee shall have seven (7) days to cure, or otherwise be in material breach of this Agreement.

11.    **Rejection of Franchise Agreements.** If the sale to the Buyer is consummated, the Franchise Agreements of each member of the Committee shall be deemed rejected and terminated under 11 U.S.C. § 365.  In connection with the deemed rejection, the members of the Committee shall not file any proof of claim and shall waive any claim against the Estate based on the rejection of the Franchise Agreements.

12.    **Initial Bid.** Together, the Cash Payment and Royalty Component shall be considered an "Initial Bid" for the Purchased Assets. The Trustee represents and warrants that he has not signed any other sale agreement prior to this Agreement. Payments shall be made payable to "Richard A. Marshack, Chapter 7 Trustee" and delivered to Marshack Hays LLP, 870 Roosevelt Irvine, California 92620.

13.    **Overbids**. The sale of the Purchased Assets shall be subject to overbid at an open auction to be held in the Bankruptcy Court at the time of the hearing on the Sale Motion.

14.    **Closing Date.** With the mutual agreement of the Parties, a closing date (the "Closing Date") shall be set not later than 15 days after the Bankruptcy Court enters an order approving the sale of the Purchased Assets to Buyer.

15.    **Bankruptcy Court Approval Required.** The Trustee has filed and served a Sale Motion requesting a finding from the bankruptcy court that the Successful Bidder is a good faith purchaser for value as defined in 11 U.S.C. § 363(m), and the sale shall be free and clear of all liens, claims, interests, and encumbrances under 11 U.S.C. § 363(f), with any lien, claim, etc. to attach to the proceeds of sale, including specifically any claims regarding the Purchased Assets and Royalty Component to attach to such proceeds. The Parties acknowledge and agree that Bankruptcy Court approval of this Agreement and the Sale Motion is a condition precedent to this Agreement's effectiveness; *provided, however* that, if the Court approves the Agreement without approving the compromise and settlement provided for in paragraphs 5-11, the Agreement shall take effect except with respect to those paragraphs.  In that case, Court approval of paragraphs 5-11 in accordance with paragraph 16 will remain a condition precedent to paragraphs 5-11. Moreover, the Parties expressly acknowledge that this Agreement is subject to overbid.

16.    **Conditional Settlement by Committee.** The compromise and settlement provided for in paragraphs 5-11 of this Agreement is expressly conditioned upon approval by the Bankruptcy Court, and the approval of the Buyer as the Successful Bidder. If the Buyer is not deemed the Successful Bidder, the Committee shall not be obligated to pay the Royalty

Component, the mutual waivers in this Agreement shall not be effective, and this Agreement shall terminate as to paragraphs 5-11 of this Agreement. The Trustee shall prepare, file, and serve noticed motion(s) for an order approving and authorizing the Royalty Component under Federal Rule of Bankruptcy Procedure 9019 and the rejection and termination of the Franchise Agreements. The Trustee shall cooperate with the Committee regarding the form of the motions and proposed orders, but the final form of such motions and orders shall be in the Trustee's sole and absolute discretion, subject to the Committee's rights to object to any inconsistency or inaccuracy in such motions or orders. If the Court does not enter an order approving the Royalty Component compromise, neither the Committee nor its members shall be obligated under the terms of this Agreement to pay the Royalty Component. In that event, the Trustee reserves all rights to prosecute collections of the Royalty Component and the Committee and its members reserve all rights and defenses in connection with the Franchise Agreements.

17.    **Authority to Sign.** The authorized signatory below on behalf of the Committee represents and warrants that s/he has the authority on behalf of the Committee comprised of all members listed in Exhibit "1" to sign the Agreement and effectuate every provision of this Agreement.

18.    **Trustee's Liability.** The Trustee is signing this Agreement solely in his capacity as the Chapter 7 Trustee of the Estate. Nothing contained in this Agreement shall in any way impute liability to Richard A. Marshack individually, his counsel of record Marshack Hays LLP, his accountants, agents, or anyone acting on his or their behalf.

19.    **Committee Representative Liability.** The undersigned authorized representative of the Committee is signing solely in his capacity as representative of the Committee. Nothing contained in this Agreement shall in any way impute liability to the representative individually, his accountants, agents, or anyone acting on his or their behalf. Moreover, nothing in this agreement shall in any way impute liability to the Committee's counsel, G&B Law, LLP.

20.    **Attorneys' Fees and Costs.** Each of the Parties shall each bear the cost of their own respective attorneys' fees and costs incurred in connection with their investigation, negotiation, and documentation of this Agreement. Nothing in this Agreement limits the ability of the Trustee or retained professionals from seeking allowance of compensation from the Estate for services related to this matter.

21.    **Governing Law.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of California applicable to contracts made and is to be performed entirely within such state. In the event of any dispute, the United States Bankruptcy Court for the Central District of California, Santa Ana Division, shall be the exclusive forum to resolve such dispute.

22.    **Entire Agreement.** The Parties to this Agreement represent and warrant that they have read this Agreement in its entirety, that they fully understand their rights and obligations under this Agreement, that they have executed this Agreement freely and voluntarily, that this Agreement constitutes the entire understanding and agreement between the Parties with respect to the matters referred to in this Agreement, and that there are no other representations, covenants, or other prior or contemporaneous agreements which are not specifically incorporated. The Parties

further represent and warrant that they have consulted with an attorney of their choice who has explained to them all of the terms and conditions of this Agreement and the consequences of signing it.

23.    Headings. The paragraph headings contained in this Agreement are for convenience only and shall not be considered for any purpose in construing this Agreement.

24.    Counterparts. This Agreement may be executed in counterparts and by facsimile signature with the same force and effect as if all original signatures were set forth in a single document. This Agreement shall not be binding until signed by both Parties.

25.    Amendments. Any amendment, modification, or other change to this Agreement must be in writing and signed by the duly authorized representative of all Parties and must expressly state the intent of the Parties to amend, modify, or otherwise change this Agreement. Moreover, any amendment to this Agreement must also be approved by the bankruptcy court in order to be effective.

IN WITNESS WHEREOF, the Parties execute this Agreement as of the day and year written in the date lines below.

DATED: December 12, 2019

By: _____
RICHARD A. MARSHACK,
Chapter 7 Trustee

DATED: December 10th, 2019

By: _____
Christopher A. Brown
AUTHORIZED REPRESENTATIVE FOR THE
UNOFFICIAL COMMITTEE OF ULTIMATE
BRANDS FRANCHISEES

DATED: December 10th, 2019

_____
Jeff N. Egbert Trustee
Unofficial Committee of Ultimate Brands
Franchisees Cooperative Trust, Buyer

APPROVED AS TO FORM

MARSHACK HAYS LLP

By: _____
D. EDWARD HAYS
DAVID A. WOOD
TINHO MANG
Attorneys for Chapter 7 Trustee,
RICHARD A. MARSHACK

G&B LAW, LLP

By: _____
DOUGLAS M. NEISTAT
JEREMY H. ROTHSTEIN
Attorneys for THE UNOFFICIAL
COMMITTEE OF ULTIMATE
BRANDS FRANCHISEES

{00472485}4811-9995-2464, v. 1
1803955 1 - 32404.0001

**Schedule A**

**PURCHASED ASSETS**

- All 18|8 trademarks, service marks, and related commercial symbols

- The 18|8 Brand System including its distinctive format, methods, procedures, signs, designs, layouts, standards, and specifications

- Confidential Information relating to developing and operating 18|8 Salons including, without limitation:

  1. Training and operations materials and manuals;
  2. Methods, formats, specifications, standards, systems, procedures, sales and marketing techniques in developing and operating 18|8 Salons;
  3. Marketing and advertising materials;
  4. All computer software and other technology that is proprietary to the Company;
  5. Customer lists, POS databases, communication and retention programs, and data used or generated in connection with those programs; and
  6. Graphic designs and related intellectual property.

- Franchise System website including all intellectual property and other rights in the website and all information contained therein

- Franchise System social media accounts and login credentials

- Franchise System Gmail accounts and login credentials

## Schedule B

## POSTPETITION ROYALTY ADJUSTMENTS

|  | Membership and Gift Card Credits | June 28 - July 31 Royalties Already Paid at 8% | TOTAL Adjustments |
|---|---|---|---|
| Ted Sheeley | | - | - |
| Joe Bryan | (669) | (6,772) | (7,442) |
| Andrew Hulse | (217) | (6,870) | (7,087) |
| Chris Brown | (350) | (6,033) | (6,383) |
| Neeraj Khanna | | | |
| David Floyd | | (3,761) | (3,761) |
| Skip and Nancy Plesnarski | (1,258) | (5,844) | (7,102) |
| Geoff Sampson | (401) | (5,279) | (5,680) |
| Robin and Jim Della Penna | | (4,010) | (4,010) |
| Keith Blanco | (164) | | (164) |
| David Schlockman / Austin Graff | | (2,251) | (2,251) |
| Susan Hawkins / Dennis Funkhouser | | (3,946) | (3,946) |
| Erich Herman | | (2,734) | (2,734) |
| Kristine Givens | (315) | (1,977) | (2,292) |
| Ash Seth | | (1,724) | (1,724) |
| Mark Ravenscraft | | (1,961) | (1,961) |
| David Klein | | (2,899) | (2,899) |
| Walt and Cathy Kozlowski | | (1,305) | (1,305) |
| Regina Shanklin | (80) | (1,968) | (2,048) |
| Jeff Forney | (59) | (2,085) | (2,144) |
| Jeff Eggert | (4,086) | (6,293) | (10,379) |
| Joe O'Brien | (22) | (3,006) | (3,028) |
| Craig Howard | (2,006) | (3,239) | (5,245) |
| Steve Nordeen | | | |
| TOTAL | (9,627) | (73,958) | (83,585) |

### Schedule C-1

## PREPETITION ROYALTY EXCEPTIONS

**Keith Blanco**
Asserts that Prepetition Royalties
were waived.

**Ted Sheeley**
Asserts defenses to payment and
inability to pay

**Scott Stearns**
Asserts inability to pay

**Schedule C-2**

**WRITTEN NONCONSENT OF COMMITTEE MEMBERS**

and Samir Alami does not intend to participate.
His written nonconsent will follow.

**Schedule D**

## RESTATED LIST OF COMMITTEE MEMBERS PARTICIPATING IN ROYALTY COMPONENT AND ROYALTY PAYMENT AMOUNTS

[Subject to increase in final reconciliation between the Trustee and Franchisees]

| | Ordinary Royalty at 7% | Ordinary Marketing Fee at 1% | Total Ordinary Royalty + Marketing Fee | Royalties at 3.5% Rate | Members hip and Gift Card Credits | June 28 - July 31 Royalties Already Paid at 8% | TOTAL OFFSETS | Net Due |
|---|---|---|---|---|---|---|---|---|
| Scott Stearns* | 21,498 | 3,071 | 24,569 | 10,749 | - | - | - | 10,749 |
| Ted Sheeley | 15,123 | 2,160 | 17,283 | 7,561 | - | - | - | 7,561 |
| Joe Bryan | 29,948 | 4,278 | 34,226 | 14,974 | (669) | (6,772) | (7,442) | 7,532 |
| Andrew Hulse | 26,551 | 3,793 | 30,343 | 13,275 | (217) | (6,870) | (7,087) | 6,189 |
| Chris Brown | 24,986 | 3,569 | 28,555 | 12,493 | (350) | (6,033) | (6,383) | 6,110 |
| Neeraj Khanna | 32,410 | 4,630 | 37,040 | 16,205 | (3,238) | (7,817) | (11,055) | 5,150 |
| David Floyd | 17,795 | 2,542 | 20,337 | 8,897 | (151) | (3,761) | (3,912) | 4,986 |
| Skip and Nancy Plesnarski | 24,125 | 3,446 | 27,571 | 12,062 | (1,258) | (5,844) | (7,102) | 4,961 |
| Geoff Sampson | 21,031 | 3,004 | 24,035 | 10,515 | (401) | (5,279) | (5,680) | 4,836 |
| Robin and Jim Della Penna | 16,226 | 2,318 | 18,544 | 8,113 | | (4,010) | (4,010) | 4,103 |
| Keith Blanco | 7,963 | 1,138 | 9,101 | 3,982 | (164) | | (164) | 3,818 |
| David Schlockman / Austin Graff | 11,888 | 1,698 | 13,586 | 5,944 | | (2,251) | (2,251) | 3,693 |
| Susan Hawkins / Dennis Funkhouser | 15,354 | 2,193 | 17,547 | 7,677 | (264) | (3,946) | (4,210) | 3,467 |
| Erich Herman | 11,757 | 1,680 | 13,437 | 5,879 | (552) | (2,734) | (3,286) | 2,592 |
| Kristine Givens | 9,105 | 1,301 | 10,406 | 4,553 | (315) | (1,977) | (2,292) | 2,260 |
| Ash Seth | 7,801 | 1,114 | 8,915 | 3,900 | (157) | (1,724) | (1,882) | 2,019 |
| Mark Ravenscraft | 10,431 | 1,490 | 11,921 | 5,215 | (1,349) | (1,961) | (3,311) | 1,905 |
| David Klein | 9,447 | 1,350 | 10,796 | 4,723 | 45 | (2,899) | (2,854) | 1,869 |
| Walt and Cathy Kozlowski | 5,758 | 823 | 6,581 | 2,879 | 241 | (1,305) | (1,064) | 1,815 |
| Regina Shanklin | 7,725 | 1,104 | 8,828 | 3,862 | (80) | (1,968) | (2,048) | 1,814 |
| Jeff Forney | 7,600 | 1,086 | 8,686 | 3,800 | (59) | (2,085) | (2,144) | 1,656 |
| Jeff Eggert | 24,022 | 3,432 | 27,454 | 12,011 | (4,086) | (6,293) | (10,379) | 1,632 |
| Joe O'Brien | 9,220 | 1,317 | 10,537 | 4,610 | (22) | (3,006) | (3,028) | 1,582 |
| Craig Howard | 9,570 | 1,367 | 10,937 | 4,785 | 3 | (3,239) | (3,236) | 1,549 |

{00472485}4811-9995-2464, v. 1
1803955.1 - 32404.0001

| Steve Nordeen | 6,012 | 859 | 6,871 | 3,006 | - | (1,411) | (1,411) | 1,596 |
| | 383,345 | 54,763 | 438,109 | 191,673 | (13,043) | (83,185) | (96,229) | 95,444 |
| TOTAL | | | | | | | | |

**\*** Franchisee cannot promptly pay the full amount due and therefore requests a reduction and/or a payment plan.

**Exhibit "1"**

## UNOFFICIAL COMMITTEE OF ULTIMATE BRANDS FRANCHISEES MEMBERS

| | |
|---|---|
| Ted Sheeley | Kristine Givens |
| Joe Bryan | Ash Seth |
| Andrew Hulse | Mark Ravenscraft |
| Chris Brown | David Klein |
| Neeraj Khanna | Walt and Cathy Kozlowski |
| David Floyd | Regina Shanklin |
| Skip and Nancy Plesnarski | Jeff Forney |
| Geoff Sampson | Jeff Eggert |
| Robin and Jim Della Penna | Joe O'Brien |
| Keith Blanco | Craig Howard |
| David Schlockman / Austin Graff | Steve Nordeen |
| Susan Hawkins / Dennis Funkhouser | Samer Alami |
| Erich Herman | Scott Stearns |

**Exhibit "2"**

**SPREADSHEET FROM OCTOBER 24, 2019 SENT TO COMMITTEE AND
REPRODUCED HERE FOR CLARIFICATION**

## Ultimate Franchises, Inc.
## Past Due Amounts for Current Franchisees

| | Date | Transaction Type | Num | Terms | Due Date | Open Balance | |
|---|---|---|---|---|---|---|---|
| **Cassie Humphries** | | | | | | | |
| | 03/31/2019 | Invoice | 4612 | Due on receipt | 04/01/2019 | 220.37 | |
| | 04/30/2019 | Invoice | 4649 | Due on receipt | 05/01/2019 | 1,079.54 | |
| | 05/31/2019 | Invoice | 4693 | Due on receipt | 06/01/2019 | 1,124.37 | |
| | 06/30/2019 | Invoice | 4739 | Due on receipt | 07/01/2019 | 967.32 | |
| | 07/31/2019 | Invoice | 4779 | Due on receipt | 08/01/2019 | 1,263.05 | |
| **Total for Cassie Humphries** | | | | | | $ 4,654.65 | $ 4,654.65 |
| **Ed McBride** | | | | | | | |
| | 06/30/2019 | Invoice | 4705 | Due on receipt | 07/01/2019 | 409.52 | |
| | 07/31/2019 | Invoice | 4749 | Due on receipt | 08/01/2019 | 1,512.42 | |
| **Total for Ed McBride** | | | | | | $ 1,921.94 | $ 1,921.94 |
| **Hunter & Myers LLC** | | | | | | | |
| | 08/29/2019 | Journal Entry | NSF Returns | | 08/29/2019 | 631.53 | |
| **Total for Hunter & Myers LLC** | | | | | | $ 631.53 | $ 631.53 |
| **Jose Garcia Trevino** | | | | | | | |
| | 02/28/2018 | Invoice | 3534 | Due on receipt | 03/01/2018 | 1,740.85 | |
| | 03/31/2018 | Invoice | 3608 | Due on receipt | 04/01/2018 | 2,517.20 | |
| | 05/31/2018 | Invoice | 3726 | Due on receipt | 06/01/2018 | 2,550.78 | |
| | 06/30/2018 | Invoice | 3803 | Due on receipt | 07/01/2018 | 2,012.75 | |
| | 07/31/2018 | Invoice | 3887 | Due on receipt | 08/01/2018 | 2,397.76 | |
| | 08/31/2018 | Invoice | 3971 | Due on receipt | 09/01/2018 | 2,254.22 | |
| | 09/30/2018 | Invoice | 4088 | Due on receipt | 10/01/2018 | 2,290.77 | |
| | 10/31/2018 | Invoice | 4167 | Due on receipt | 11/01/2018 | 2,341.01 | |
| | 01/31/2019 | Invoice | 4445 | Due on receipt | 02/01/2019 | 2,319.63 | |
| | 08/09/2019 | Journal Entry | July Royalty NSF | | 08/09/2019 | 1,953.89 | |
| **Total for Jose Garcia Trevino** | | | | | | $ 22,378.86 | $ 22,378.86 |
| **Kara Davidson** | | | | | | | |
| | 03/27/2017 | Journal Entry | | | 03/27/2017 | 1,515.20 | |
| | 04/10/2017 | Journal Entry | March NSF | | 04/10/2017 | 1,728.64 | |
| | 05/09/2017 | Journal Entry | April NSF | | 05/09/2017 | 2,308.32 | |
| | 07/10/2017 | Journal Entry | June NSF | | 07/10/2017 | 1,972.69 | |
| | 07/20/2017 | Journal Entry | June NSF(2) | | 07/20/2017 | 2,969.50 | |
| | 07/31/2017 | Invoice | 2923 | Due on receipt | 07/31/2017 | 2,120.48 | |
| | 07/31/2017 | Invoice | 2922 | Due on receipt | 07/31/2017 | 2,281.59 | |
| | 08/31/2017 | Invoice | 3015 | Due on receipt | 09/01/2017 | 2,114.67 | |
| | 08/31/2017 | Invoice | 3014 | Due on receipt | 09/01/2017 | 2,779.71 | |
| | 09/30/2017 | Invoice | 3110 | Due on receipt | 10/01/2017 | 2,060.39 | |
| | 09/30/2017 | Invoice | 3109 | Due on receipt | 10/01/2017 | 2,936.38 | |
| | 10/31/2017 | Invoice | 3193 | Due on receipt | 11/01/2017 | 1,155.28 | |
| | 10/31/2017 | Invoice | 3192 | Due on receipt | 11/01/2017 | 3,756.14 | |
| | 11/30/2017 | Invoice | 3270 | Due on receipt | 12/01/2017 | 3,312.96 | |
| | 11/30/2017 | Invoice | 3271 | Due on receipt | 12/01/2017 | 1,071.30 | |
| | 12/31/2017 | Invoice | 3350 | Due on receipt | 01/01/2018 | 4,256.23 | |
| | 01/31/2018 | Invoice | 3425 | Due on receipt | 02/01/2018 | 3,918.33 | |
| | 02/28/2018 | Invoice | 3492 | Due on receipt | 03/01/2018 | 3,622.43 | |
| | 03/31/2018 | Invoice | 3564 | Due on receipt | 04/01/2018 | 4,277.88 | |
| | 06/30/2018 | Journal Entry | JE063018-REMOVE NSF | | 06/30/2018 | -2,318.28 | |
| | 01/10/2019 | Journal Entry | Dec Royalty NSF | | 01/10/2019 | 4,397.51 | |
| | 02/11/2019 | Journal Entry | Jan Royalty NSF | | 02/11/2019 | 3,735.58 | |
| | 03/08/2019 | Journal Entry | Feb Royalty NSF | | 03/08/2019 | 3,359.35 | |
| | 04/05/2019 | Journal Entry | March Royalty NSF | | 04/05/2019 | 4,291.86 | |
| | 05/06/2019 | Journal Entry | April Royalty NSF | | 05/06/2019 | 3,358.42 | |
| | 06/10/2019 | Journal Entry | May Royalty NSF | | 06/10/2019 | 4,187.13 | |
| | 06/30/2019 | Invoice | 4707 | Due on receipt | 07/01/2019 | 3,982.97 | |
| | 07/31/2019 | Invoice | 4751 | Due on receipt | 08/01/2019 | 3,797.16 | |
| **Total for Kara Davidson** | | | | | | $ 78,949.46 | $ 78,949.46 |
| **Keith Blanco** | | | | | | | |
| | 11/30/2017 | Invoice | 3318 | Due on receipt | 12/01/2017 | 3,840.31 | |
| | 11/30/2017 | Credit Memo | 3336 | | 11/30/2017 | -1,000.00 | |
| | 12/31/2017 | Invoice | 3396 | Due on receipt | 01/01/2018 | 3,089.11 | |
| | 12/31/2017 | Credit Memo | | | 12/31/2017 | -1,000.00 | |
| | 12/31/2017 | Invoice | 3397 | Due on receipt | 01/01/2018 | 1,938.26 | |
| | 01/04/2018 | Journal Entry | ACH Returns - Blanco | | 01/04/2018 | 2,039.32 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 01/31/2018 | Invoice | 3465 | Due on receipt | 02/01/2018 | 3,231.28 | |
| 01/31/2018 | Invoice | 3466 | Due on receipt | 02/01/2018 | 1,667.99 | |
| 01/31/2018 | Credit Memo | 3549 | | 01/31/2018 | -1,000.00 | |
| 02/28/2018 | Invoice | 3530 | Due on receipt | 03/01/2018 | 2,893.05 | |
| 02/28/2018 | Credit Memo | 3550 | | 02/28/2018 | -1,000.00 | |
| 02/28/2018 | Invoice | 3531 | Due on receipt | 03/01/2018 | 1,515.48 | |
| 03/31/2018 | Invoice | 3603 | Due on receipt | 04/01/2018 | 4,035.57 | |
| 03/31/2018 | Invoice | 3604 | Due on receipt | 04/01/2018 | 2,023.82 | |
| 04/30/2018 | Invoice | 3662 | Due on receipt | 05/01/2018 | 3,513.41 | |
| 04/30/2018 | Invoice | 3663 | Due on receipt | 05/01/2018 | 431.12 | |
| 05/31/2018 | Invoice | 3722 | Due on receipt | 06/01/2018 | 212.99 | |
| 05/31/2018 | Invoice | 3721 | Due on receipt | 06/01/2018 | 3,618.20 | |
| 06/30/2018 | Invoice | 3798 | Due on receipt | 07/01/2018 | 3,802.60 | |
| 06/30/2018 | Invoice | 3799 | Due on receipt | 07/01/2018 | 754.45 | |
| 07/31/2018 | Invoice | 3892 | Due on receipt | 08/01/2018 | 3,094.87 | |
| 07/31/2018 | Invoice | 3883 | Due on receipt | 08/01/2018 | 1,348.19 | |
| 08/31/2018 | Invoice | 3966 | Due on receipt | 09/01/2018 | 3,753.07 | |
| 08/31/2018 | Invoice | 3967 | Due on receipt | 09/01/2018 | 1,220.52 | |
| 09/30/2018 | Invoice | 4082 | Due on receipt | 10/01/2018 | 1,312.03 | |
| 09/30/2018 | Invoice | 4083 | Due on receipt | 10/01/2018 | 1,851.40 | |
| 10/31/2018 | Invoice | 4164 | Due on receipt | 11/01/2018 | 3,880.37 | |
| 10/31/2018 | Invoice | 4165 | Due on receipt | 11/01/2018 | 2,092.53 | |
| 11/30/2018 | Invoice | 4270 | Due on receipt | 12/01/2018 | 1,730.87 | |
| 11/30/2018 | Invoice | 4260 | Due on receipt | 12/01/2018 | 1,489.86 | |
| 11/30/2018 | Invoice | 4259 | Due on receipt | 12/01/2018 | 3,996.95 | |
| 12/31/2018 | Invoice | 4346 | Due on receipt | 01/01/2019 | 2,942.26 | |
| 12/31/2018 | Invoice | 4347 | Due on receipt | 01/01/2019 | 1,413.56 | |
| 12/31/2018 | Invoice | 4318 | Due on receipt | 01/01/2019 | 1,310.12 | |
| 01/31/2019 | Invoice | 4440 | Due on receipt | 02/01/2019 | 3,517.71 | |
| 01/31/2019 | Invoice | 4441 | Due on receipt | 02/01/2019 | 1,765.05 | |
| 01/31/2019 | Invoice | 4414 | Due on receipt | 02/01/2019 | 1,593.07 | |
| 02/28/2019 | Invoice | 4497 | Due on receipt | 03/01/2019 | 1,762.37 | |
| 02/28/2019 | Invoice | 4525 | Due on receipt | 03/01/2019 | 3,241.43 | |
| 02/28/2019 | Invoice | 4526 | Due on receipt | 03/01/2019 | 1,672.25 | |
| 03/31/2019 | Invoice | 4610 | Due on receipt | 04/01/2019 | 3,411.78 | |
| 03/31/2019 | Invoice | 4598 | Due on receipt | 04/01/2019 | 2,156.93 | |
| 03/31/2019 | Invoice | 4576 | Due on receipt | 04/01/2019 | 2,069.54 | |
| 04/30/2019 | Invoice | 4646 | Due on receipt | 05/01/2019 | 3,441.36 | |
| 04/30/2019 | Invoice | 4647 | Due on receipt | 05/01/2019 | 2,160.12 | |
| 04/30/2019 | Invoice | 4623 | Due on receipt | 05/01/2019 | 2,051.34 | |
| 05/31/2019 | Invoice | 4699 | Due on receipt | 06/01/2019 | 2,614.72 | |
| 05/31/2019 | Invoice | 4690 | Due on receipt | 06/01/2019 | 4,020.13 | |
| 05/31/2019 | Invoice | 4666 | Due on receipt | 06/01/2019 | 2,118.03 | |
| 06/30/2019 | Invoice | 4709 | Due on receipt | 07/01/2019 | 2,382.90 | |
| 06/30/2019 | Invoice | 4735 | Due on receipt | 07/01/2019 | 2,844.58 | |
| 06/30/2019 | Invoice | 4734 | Due on receipt | 07/01/2019 | 4,295.35 | |
| 07/31/2019 | Invoice | 4776 | Due on receipt | 08/01/2019 | 4,033.16 | |
| 07/31/2019 | Invoice | 4753 | Due on receipt | 08/01/2019 | 2,752.14 | |
| 07/31/2019 | Invoice | 4777 | Due on receipt | 08/01/2019 | 2,556.72 | |
| **Total for Keith Blanco** | | | | | **$ 122,504.24** | $ 122,504.24 |
| **Scott Stearns** | | | | | | |
| 02/10/2018 | Journal Entry | Jan NSF | | 02/10/2018 | 4,526.60 | |
| 03/12/2018 | Journal Entry | Feb NSF | | 03/12/2018 | 4,240.11 | |
| 04/06/2018 | Journal Entry | March NSF | | 04/06/2018 | 5,466.32 | |
| 05/10/2018 | Journal Entry | April NSF Returns | | 05/10/2018 | 4,673.45 | |
| 06/08/2018 | Journal Entry | May  NSF Returns | | 06/08/2018 | 3,988.94 | |
| 06/30/2018 | Journal Entry | JE063018-REMOVE NSF | | 06/30/2018 | -4,115.26 | |
| 07/08/2018 | Journal Entry | June NSF Returns | | 07/08/2018 | 4,176.75 | |
| 08/10/2018 | Journal Entry | July NSF Returns | | 08/10/2018 | 4,488.29 | |
| 09/10/2018 | Journal Entry | Aug NSF Return | | 09/10/2018 | 5,844.87 | |
| 09/30/2018 | Invoice | 4073 | Due on receipt | 10/01/2018 | 5,578.85 | |
| 10/31/2018 | Invoice | 4156 | Due on receipt | 11/01/2018 | 4,633.35 | |
| 11/30/2018 | Invoice | 4252 | Due on receipt | 12/01/2018 | 4,632.90 | |
| 12/31/2018 | Invoice | 4338 | Due on receipt | 01/01/2019 | 3,012.11 | |
| 01/31/2019 | Invoice | 4434 | Due on receipt | 02/01/2019 | 3,621.88 | |
| 02/28/2019 | Invoice | 4517 | Due on receipt | 03/01/2019 | 3,938.79 | |
| 03/31/2019 | Invoice | 4588 | Due on receipt | 04/01/2019 | 4,219.70 | |
| 04/30/2019 | Invoice | 4639 | Due on receipt | 05/01/2019 | 4,435.88 | |
| 05/31/2019 | Invoice | 4683 | Due on receipt | 06/01/2019 | 4,804.57 | |

|  | 06/30/2019 | Invoice | 4727 | Due on receipt | 07/01/2019 | 4,858.85 | | |
|---|---|---|---|---|---|---|---|---|
|  | 07/31/2019 | Invoice | 4770 | Due on receipt | 08/01/2019 | 4,157.23 | | |
| Total for Scott Stearns | | | | | | $ 81,184.18 | $ | 81,184.18 |
| Ted & Tara Sheeley | | | | | | | | |
|  | 11/29/2018 | Journal Entry | Sheeley NSF | | 11/29/2018 | 3,472.60 | | |
|  | 12/10/2018 | Journal Entry | Sheeley NSF | | 12/10/2018 | 3,670.20 | | |
|  | 02/11/2019 | Journal Entry | Jan Royalty NSF | | 02/11/2019 | 1,443.09 | | |
|  | 03/08/2019 | Journal Entry | Feb Royalty NSF | | 03/08/2019 | 1,490.68 | | |
|  | 04/05/2019 | Journal Entry | March Royalty NSF | | 04/05/2019 | 1,777.56 | | |
|  | 06/10/2019 | Journal Entry | May Royalty NSF | | 06/10/2019 | 1,680.78 | | |
|  | 06/30/2019 | Invoice | 4715 | Due on receipt | 07/01/2019 | 1,680.78 | | |
|  | 07/03/2019 | Journal Entry | June Royalty NSF | | 07/03/2019 | 1,615.17 | | |
|  | 08/09/2019 | Journal Entry | July Royalty NSF | | 08/09/2019 | 3,448.28 | | |
| Total for Ted & Tara Sheeley | | | | | | $ 20,279.14 | $ | 20,279.14 |
| Walt Kozlowski | | | | | | | | |
|  | 08/29/2019 | Journal Entry | NSF Returns | | 08/29/2019 | 367.44 | | |
| Total for Walt Kozlowski | | | | | | $ 367.44 | $ | 367.44 |
|  | | | | | | | $ | 332,871.44 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled (specify): **EXHIBITS "1" AND "2" TO ORDER GRANTING TRUSTEE'S SALE MOTION AND (1) AUTHORIZING SALE (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; (2) DETERMINING THE BUYER AS A GOOD FAITH PURCHASER UNDER 11 U.S.C. § 363(M); AND (3) WAIVING THE 14-DAY STAY OF FRBP 6004** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 24, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL:**
On **January 24, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

    **MAIL REDIRECTED TO TRUSTEE 08/13/19**
    **DEBTOR**
    ULTIMATE BRANDS INC
    ~~30821 SEMINOLE PL~~
    ~~LAGUNA NIGUEL, CA 92677-2456~~

☐    Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 24, 2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

    The Honorable Theodor C. Albert – via personal delivery
    PRESIDING JUDGE'S COPY
    United States Bankruptcy Court
    Central District of California
    Ronald Reagan Federal Building and Courthouse
    411 West Fourth Street, Suite 5085 / Courtroom 5B
    Santa Ana, CA 92701-4593

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 24, 2020 | Cynthia Bastida | /s/ Cynthia Bastida |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** continued:

- **ATTORNEY FOR INTERESTED PARTY MAXIM COMMERCIAL CAPITAL, LLC:** Andrew K Alper aalper@frandzel.com, rsantamaria@frandzel.com
- **ATTORNEY FOR CREDITOR LIPT WINCHESTER ROAD, INC.:** Dana M Andreoli dandreoli@steyerlaw.com, sleshin@steyerlaw.com
- **ATTORNEY FOR CREDITOR 660 BVD, LLC:** Keith Patrick Banner    kbanner@greenbergglusker.com, sharper@greenbergglusker.com; calendar@greenbergglusker.com
- **ATTORNEY FOR UNITED STATES TRUSTEE (SA):** Frank Cadigan    frank.cadigan@usdoj.gov
- **ATTORNEY FOR CREDITOR 600 ANTON BOULEVARD ASSOCIATES:** Caroline Djang caroline.djang@bbklaw.com, julie.urquhart@bbklaw.com; sansanee.wells@bbklaw.com; paul.nordlund@bbklaw.com
- **INTERESTED PARTY COURTESY NEF:** Timothy W Evanston tevanston@swelawfirm.com, gcruz@swelawfirm.com; lgarrett@swelawfirm.com; jchung@swelawfirm.com
- **ATTORNEY FOR PLAINTIFFS SALON REBELLE, INC.; SALON REBELLE LLC; DARRYL VERGOLINO-HOLIDAY; ELIZABETH AGUIAR-GUTIERREZ; MARCOS TRUJILLO; and VICKY GARZA:** Norma V Garcia ngarciaguillen@garciarainey.com
- **ATTORNEY FOR UNITED STATES TRUSTEE (SA):** Michael J Hauser    michael.hauser@usdoj.gov
- **ATTORNEY FOR CREDITOR CUTTING EDGE VENTURES INC.:** M. Jonathan Hayes jhayes@rhmfirm.com, roksana@rhmfirm.com; rosario@rhmfirm.com; janita@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; priscilla@rhmfirm.com; pardis@rhmfirm.com; russ@rhmfirm.com; rebeca@rhmfirm.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays    ehays@marshackhays.com, 8649808420@filings.docketbird.com
- **ATTORNEY FOR CREDITOR WILLIAM HARTER:** Joshua J Herndon    jherndon@attorneygl.com, e-service@attorneygl.com
- **ATTORNEY FOR CREDITORS SHIPSHAPE COLLECTIVE OF FITCHBURG, LLC; CREDITOR JOHN SHAW; and CREDITOR MIDORI SHAW:** Nicholas S Kanter nkanter@lewitthackman.com
- **ATTORNEY FOR CREDITOR BLD CAPITAL, LLC:** Andy Kong    Kong.Andy@ArentFox.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Tinho Mang    tmang@marshackhays.com, 8444806420@filings.docketbird.com
- **RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com
- **INTERESTED PARTY COURTESY NEF:** Robert S Marticello Rmarticello@swelawfirm.com, gcruz@swelawfirm.com; lgarrett@swelawfirm.com; jchung@swelawfirm.com
- **ATTORNEY FOR CREDITOR WHEATSTRONG ENTERPRISES and CREDITOR MICHAEL JOHN PATTERSON:** Eric A Mitnick    MitnickLaw@aol.com, mitnicklaw@gmail.com
- **ATTORNEY FOR CREDITOR UNOFFICIAL COMMITTEE OF FRANCHISEES:** Douglas M Neistat dneistat@gblawllp.com, mramos@gblawllp.com
- **ATTORNEY FOR CREDITOR REGENCY CENTERS, LP:** Ernie Zachary Park    ernie.park@bewleylaw.com
- **ATTORNEY FOR INTERESTED PARTY W. SCOTT GRIFFITHS:** Thomas J Polis tom@polis-law.com, paralegal@polis-law.com; r59042@notify.bestcase.com
- **ATTORNEY FOR CREDITOR UNOFFICIAL COMMITTEE OF FRANCHISEES:** Jeremy H Rothstein jrothstein@gblawllp.com, mramos@gblawllp.com
- **UNITED STATES TRUSTEE (SA):** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR DEBTOR ULTIMATE BRANDS INC:** Julie J Villalobos    julie@oaktreelaw.com, oakecfmail@gmail.com; villalobosjr51108@notify.bestcase.com
- **INTERESTED PARTY:** Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** David Wood dwood@marshackhays.com, 8649808420@filings.docketbird.com
- **ATTORNEY FOR CREDITOR 660 BVD, LLC:** Ryan D Zick    rzick@ppplaw.com, kstewart@ppplaw.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**